## *HOPE v. FOLEY et al.

No. 6482.   Opinion Filed May 2, 1916.

(157 Pac. 727.)

1.   **INDIANS—Full-Blood Inherited Lands—Removal of Restrictions—Conveyances—Approval.** The approval of a conveyance of full-blood inherited lands by the county court, under section 9, Act May 27, 1908, c. 199, 35 Stat. 315, was not a judicial act, and was subject to collateral attack.

2.   **SAME.** Section 9, Act May 27, 1908, removed restrictions against alienations of inherited lands, and authorized adult full-blood Indian heirs to convey such land, but provided, as an essential to the validity of such conveyance, that the same should be approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.

3.   **SAME.** After the Act of May 27, 1908, became effective the Secretary of the Interior had no authority to approve conveyances of full-blood inherited Indian lands.

4.   **SAME.** Proof of the present payment of a consideration for a conveyance of inherited lands by a full-flood Indian heir is not essential to the validity of such conveyance.

5.   **SAME.** In July and August. 1907. a full-blood heir executed conveyances for inherited lands. which were not approved by the Secretary of the Interior, as provided by section 22 of the Act of April 26. 1906.   In August, 1910, the heir executed other deeds for the land to the same grantee for a recited consideration, but there was no proof of the present payment of the consideration. These conveyances were submitted to the Secretary of the Interior for approval and approved by him.   After suit had been instituted to cancel these deeds they were submitted to the proper court for approval and were approved.   **Held,** that the conveyances. having been approved by the proper court. were valid. and conveyed title to the lands to the grantee named therein.

(Syllabus by Galbraith, C.)

*Error from District Court, McIntosh County;*
*Preslie B. Cole, Judge.*

*Appealed to the Supreme Court of the United States.

Action by Willie Hope against W. T. Foley and others. Judgment for defendant T. R. H. Smith, and plaintiff brings error. Affirmed.

*J. B. Lucas* and *B. H. Tabor,* for plaintiff in error.

*Owen & Stone* and *Ledbetter, Stuart & Bell,* for defendants in error.

Opinion by GALBRAITH, C. This action was commenced in the trial court by Willie Hope, a Creek freedman, to cancel deeds which he had joined his wife, Chotke Hope, a full-blood Creek Indian, in executing prior to her death, contending that the deeds were void, and that he inherited the lands from his deceased spouse. The trial resulted in a judgment against the plaintiff and a decree adjudging the title to the lands involved to be in T. R. H. Smith, the grantee and claimant under the deeds sought to be canceled. To review that judgment Willie Hope has prosecuted an appeal to this court.

It appears from the record that the lands involved in this action were full-blood inherited Indian lands, and that Chotke Hope, the heir, joined by her husband, Willie Hope, executed three deeds, two in July and one in August, 1907, whereby the three allotments involved in this action were attempted to be conveyed for a consideration then paid of $4,800. These deeds, however, were not approved by the Secretary of the Interior, and in 1910 Smith, the claimant of the allotments under purchase, became convinced that the deeds of 1907 did not convey the title, so on August 24, 1910, he secured from Chotke Hope and Willie Hope three deeds of conveyance for these allotments. The considerations recited in the deeds were $1,800 in one, and $1,200 in each of the other two. Chotke Hope died intestate December 24, 1910, and was survived by her hus-

band, Willie Hope, but prior to her death she made application to the Secretary of the Interior for approval of these deeds executed August 24, 1910, through the Indian agency at Muskogee. Both she and her husband, Willie Hope, appeared before the Department at Muskogee and were examined as to whether or not they understood the nature of the conveyances, and as to the consideration paid for the same, and as to whether or not they had received the full value of the land, and whether or not they were then satisfied with the conveyances. At the conclusion of the investigation the approval of the deeds by the Secretary was recommended. It also appears that before this recommendation was made the lands were appraised by the Department. The Secretary of the Interior approved these deeds on May 9, 1911. On March 13, 1912, Willie Hope filed suit in the district court of McIntosh county to cancel the conveyances made on August 24, 1910, alleging that the same were void, inasmuch as they had not been approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, and that those deeds were executed without any new or additional consideration, and were intended as a ratification of the old deeds of July and August, 1907, and that the 1907 deeds were void, and not capable of ratification. On June 12, 1912, Smith presented the deeds of August, 1910, to the county court of McIntosh county, with the request that the same be approved, that being the court having jurisdiction of the settlement of the estate of the deceased allottee, and an order approving said deeds was entered by said court under that date.

Smith, defending the suit of Willie Hope to cancel the deeds and quiet title to the lands, pleaded the approval

by the Secretary of the Interior and by the county court of McIntosh county, and urged that the deeds with such approval conveyed to him a good title to the land.

The plaintiff in that action replied, setting up that the approval of the Secretary of the Interior was unauthorized by statute, and was therefore without legal effect, and that the approval of the county court was obtained by fraud, inasmuch as it was not obtained until after the death of Chotke Hope, and no notice of the application to the county court was given to Willie Hope, and the county judge was not advised of the pendency of his suit to cancel the deeds, and that, if he had been so advised, he would not have approved the same, and that such approval was without any legal force or effect to validate such conveyances. To this paragraph of the reply a demurrer was interposed, on the ground that the matters therein set up constituted a collateral attack upon a judgment, and was therefore not permissible. This demurrer, on this ground, was by the court sustained, and this ruling is assigned as error.

We are inclined to agree with the contention of the plaintiff in error that this ruling of the trial court was error. The order of approval by the county court was not a judicial act, and was open to attack upon the grounds set out in the reply in any proceeding in which the deed so approved might be offered or relied upon. *Bartlett v. Oklahoma Oil Co.* (D. C.) 218 Fed. 380; *Tiger v. Creek County,* 45 Okla. 701, 146 Pac. 912; *Brader v. James,* 49 Okla. 734, 154 Pac. 560; *Cochran v. Blanck,* 53 Okla. 317, 156 Pac. 324. However, it is contended on behalf of the defendant in error that this ruling was not prejudicial, for the reason that at the trial in the court below the plaintiff in error

was permitted to show every material fact that he relied upon to establish the fraud alleged in procuring the approval of the county court, and upon such showing his contention was denied and the approval sustained, and therefore he was not injured by the ruling in sustaining the demurrer.

With this contention we are inclined to agree. It appears from the evidence that no notice was given to Willie Hope at the time of making application to the county court for the approval, nor was he advised that the same would be made, and also that the county judge was not informed of the pendency of Willie Hope's action in the district court to cancel the deeds. The procedure then in force governing the application to the county court for the approval of deeds did not prescribe notice to the heirs, nor does it appear that the pendency of Willie Hope's action to cancel the deeds was a material fact, and that the action of the county court would have been influenced by this information if it had been furnished. The county court was doubtless influenced in approving these deeds by the action of the Interior Department in approving the same after an investigation. Although the approval of the Secretary of the Interior to these deeds was without legal force or effect, the fact that application had been made to the Department of the Interior for the approval, and that the grantors in the deeds appeared with the grantee therein before the Department and submitted to an examination, and the fact that the Department, with its special facilities for investigating such transactions, did investigate the execution of these deeds, and found that a fair consideration had been paid for the same and that the grantors in the deeds had received the full value of the land, and understood the nature of the conveyances, and were then satisfied

with the deal—these facts were doubtless sufficient in the opinion of the county court to justiy him in approving these deeds without any extended investigation. It therefore appears that the ruling on the demurrer was not prejudicial error.

It is argued with great earnestness on behalf of the plaintiff in error that the evidence clearly shows that no additional consideration was paid for the execution of the deeds of August, 1910, and that, inasmuch as the deeds of 1907 were absolutely void and incapable of ratification, there was no consideration for the deeds of 1910, and that they were therefore void, notwithstanding their approval by the county court. This argument is not sound. Section 22 of the act of April 26, 1906, provides:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent. * * * All conveyances made under this provision by heirs who are full blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe." (34 Stat. 145.)

Section 9 of the act of May 27, 1908, provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land; provided, that no conveyance of any interest of any full-blood Indian heir * * * shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. * * * *" (35 Stat. 315.)

It will be observed that neither of the statutes above set out, authorizing the conveyance of full-blood inherited

lands, prescribes as a condition precedent to the validity of a deed conveying such lands that it should only be executed upon a consideration then paid; that the provisions providing for the approval—that of 1906 by the Secretary of the Interior, and that of 1908 by the county court having jurisdiction of the settlement of the estate of the deceased allottee—are that the approval of the particular agency named in the act is essential to the validity of the conveyance. From this fact we take it that proof of the payment of a present consideration is not essential to the validity of such conveyance, but the approval of the approving agency provided in the act renders the conveyance valid, although no consideration was paid or recited in the conveyance. The title to inherited land was in the heir, and the heir had the right to convey upon approval of the approving agency. We take it that, if he gave the land away, and the proper agency approved the conveyance, the title would pass to the grantee, and the heir could not thereafter repudiate the conveyance. *Sarah Henley, nee Taylor, v. Fred W. Davis et al., ante,* p. 45, 156 Pac. 337; *McKeever v. Carter et al.,* 53 Okla. 360, 157 Pac. 56. The object of requiring the approval was to place the incompetent Indian on an equal footing with the person dealing with him, presumably competent, and the purpose of the approval was to require a disinterested agency to examine into the the transaction and ascertain whether or not the Indian grantor had been overreached in the trade. If the investigation convinced the approving agency that the full value of the land had been paid and received by the grantor in the deed, whether paid on the date of the execution of the conveyance, or when presented for approval, or paid at some time prior, could make no difference. The particular thing was that the full value of the land had been paid

to the Indian. We take it that, if the Indian, having received the full value of the land for the deeds of 1907, which were conceded to be absolutely void, and with the knowledge that those deeds did not convey title, and without fraud or duress, voluntarily executed other deeds to the same grantee, for the consideration which he had already received, there is nothing in the law that would prevent him from doing so, and that the fact, if it be a fact, that the consideration for the 1910 deeds may have been the same as that paid for the 1907 deeds, did not operate as a ratification or approval of those deeds or render the 1910 deeds ineffectual.

It is a fact of common knowledge of which the court will take notice that at the time of the execution of the 1907 deeds it was generally believed in this state that full-blood inherited land was free from restrictions in the hands of the heirs, and that the adult heirs could make valid conveyances thereof without the approval of the Secretary of the Interior. In fact, that was the view of this court June 26, 1908, when the decision in *Investment Co. v. Tiger*, 21 Okla. 630, 96 Pac. 602, was handed down. It does not seem to us that a citizen of the state should be penalized for taking the same view of the law that the highest court in the state took of it, and the fact that the deeds of 1907 proved afterwards to be worthless should not bar the grantee in those deeds from ever afterwards securing a good title to the lands for which he had paid full value. The deeds recited a consideration, one of them $1,800, and the other two $1,200 each. These deeds, having been approved by the proper court under the law, were valid, and conveyed the title to the grantee therein named.

The foregoing conclusion is not in conflict with the decision of the court in *Annie Carter v. Prairie Oil & Gas Co. et al.,* 58 Okla. —, 160 Pac. 319, since the conveyances under consideration in that case were executed prior to the enactment of May 27, 1908,. and while .the act of April 26, 1906, was in force and effect,. and the second deeds, it is found in that decision as now reported, were taken in compliance with a contract entered into at the time of the execution of the first deeds, in direct viola-tion of the provisions of section 19 of that act.

The judgment of the trial court sustaining the con-veyances of August. 24, 1910, was right, and should be affirmed.

By the Court: It is so ordered.