## McCOSAR et al. v. CHAPMAN.

No. 6207—Opinion Filed May 16, 1916.
Rehearing Denied June 6, 1916.

(157 Pac. 1059.)

1. **Indians—Lands—Restrictions on Alienation.**

Restrictions upon alienation of allotments to Creek Indians, made under Act March 1, 1901, c. 676, 31 Stat. 861, supplemented by the Act of June 30, 1902, c. 1323, 32 Stat. 500, apply only to allotments made to living citizens in their own right, and do not apply to those made on behalf of deceased members of the tribe. Mullen v. United States, 224

U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834; Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198.

2. **Same.**

A full-blood Creek Indian might convey inherited lands upon the approval of the deed by the proper court under section 9 of the act of May 27, 1908 (35 Stat. 315, c. 199), after that act became effective.

3. **Indians—Actions—Pleading—Petition.**

Where it appears from the face of the petition, in an action to set aside conveyances of full-blood inherited lands, that the conveyance was executed by adult heirs upon good consideration, October 5, 1909, and that the conveyance had been approved by the proper court, and it fails to allege any proper grounds for avoiding such conveyance, held, that the demurrer to such petition, on the ground that it fails to state facts sufficient to constitute a cause of action, was properly sustained.

(Syllabus by Galbraith, C.)

Error from District Court, Hughes County; John Caruthers, Judge.

Action by Bunnie McCosar and others against James A. Chapman. Judgment for defendant, and plaintiffs bring error. Affirmed.

Lewis C. Lawson and Lafayette Walker, Probate Atty., for plaintiffs in error.

Harry H. Rogers, for defendant in error.

Opinion by GALBRAITH, C. This action involves two allotments of Indian lands, selected in behalf of the heirs of Eliza McCosar and Ida McCosar, each of whom died unmarried and intestate and without issue, and both survived by their father. Bunnie McCosar, and a sister and brother, all of whom joined as plaintiffs in the court below, in an action to recover the land and to cancel deeds which they executed therefor. It is charged in the petition:

That the plaintiffs were full-blood Creek Indians, and that Ida McCosar and Eliza McCosar were also full-blood members of that tribe, and that the lands involved were allotted under Acts of March 1, 1901, c. 676 (31 Stat. at L. 861), and Supplemental Creek Agreement of June 30, 1902, c. 1323 (32 Stat. at L. 500), and that said allotments were restricted and inalienable for a period of 25 years from June 30, 1902; that Eliza McCosar died intestate in December, 1899, without issue and without child or children, but was survived by her father, Bunnie McCosar, and a brother and a sister; that her allotment was selected on the 6th day of January, 1902, as provided in the Supplemental Creek Agreement, and patent subsequently issued therefor, and the same was recorded in the proper recording office; that on

the 16th day of July, 1900, Ida McCosar died intestate. and without child or children or descendant, unmarried, and was survived by her father and a brother and a sister; that on the 7th day of November, 1901, her allotment was selected and patent subsequently issued therefor, as provided in the Supplemental Agreement; that on the 25th day of September, 1907, Bunnie McCosar, and his present wife, Nellie McCosar, executed to the Sherman Land Company a deed for the lands allotted to the heirs of Eliza and Ida McCosar; that on the 26th day of September, 1907, Kate Gooden also executed a deed to the Sherman Land Company for said land; that on the 17th day of December, 1909, the Sherman Land Company conveyed said land to Chapman, the defendant in error, by quit-claim deed; "that in order to carry out the force and effect of said deed so made by your complainants and that of said Sherman Land Company to said Chapman, as aforesaid, and in consideration therefor, your complainants and Nellie McCosar, the wife of said Bunnie McCosar, and George Gooden, the husband of said Kate Gooden, on the 5th day of October, 1909, made to said James A. Chapman another deed for said lands thus allotted to the heirs of said Ida and Eliza McCosar, for a pretended consideration of $1,800, as recited in said deed, but which said consideration of $1,800, as recited in said deed, was in fact never paid, as therein recited"; that the deeds to the Sherman Land Company were never approved by the Secretary of the Interior or the county judge of Hughes county, or any other court, and that the deed of complainants to Chapman was never approved by the Secretary of the Interior, nor has the restriction upon the alienation of said land, or any part thereof, been removed by the Secretary of the Interior, or otherwise; that "on the 5th day of October. 1909. the county court of Hughes county undertook to approve said deed of complainants to said Chapman on said date for said lands, and made and entered an order approving the same, which was entered of record in the office of said register of deeds of said county, and a duly certified copy of said approval is hereto attached, and asked to be read and considered as a part hereof, marked 'Exhibit No. 1;'" that immediately upon the execution of the deed of October 5. 1909, Chapman took possession of the lands, and has since unlawfully held possession thereof, and that the annual rental value of the land was $1,200, and that the rentals have been received by Chapman; that the deeds for the land, as well as the approval of that of October 5, 1909, to Chapman were absolutely null and void:

"First, because said lands were allotted under the provisions of said act of Congress approved on the 1st day of March, 1901, passed by purchase to the heirs of said Eliza McCosar and Ida McCosar, under and by reason of the terms, provisions and conditions of said act, and especially according to section 28 thereof, and under the terms and provisions of another of said acts approved on the 26th day of April, 1906, entitled 'An act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes,' the alienation of said lands, from and after the enactment of said last-named act of Congress, thereby became, and were, restricted and prohibited as therein made and provided, and said act was in full force and effect at the time each and every one of said deeds and approvals were so made; second, because said deed of October 5, 1909, was made in part consideration of said prior deeds and the contracts under which they were made, and is in violation of said acts of Congress hereinbefore cited, and another act of Congress entitled 'An act for the removal of restrictions from part of the lands of the allottees of the Five Civilized Tribes, and for other purposes,' approved on the 27th day of May, 1908; third, because the restrictions upon the alienation of said lands have never been removed, nor has the Secretary of the Interior ever approved said deeds, or any of them: fourth, because said lands are not inherited lands, and were never owned or possessed by said Eliza McCosar or Ida McCosar, at any time during their natural lives, nor were they, or either of them, at any time whatever, entitled to said lands, or had any right thereto, in fee simple or otherwise, but said lands, by reason of said acts of Congress aforesaid, became vested in your complainants as the first purchasers thereof, and therefore said county court had no right, power, authority, or jurisdiction to approve said deed of October 5, 1909, and the purported approval thereof is likewise null and void and of no legal force and effect whatever; fifth, because your complainants are full-blood Creek citizens, and are so enrolled, as hereinbefore set forth, and at the several times of making said deeds aforesaid had no right, power, authority, or legal capacity to make said deeds, or any of them; and sixth, because said Eliza McCosar and Ida McCosar died long prior to the passage of said act of Congress, approved on the 27th day of May, 1908, and no administrators were ever appointed by any court to administer upon the estate of either said Eliza or Ida, and their respective estates were never administered upon or settled, and therefore said county court did not have jurisdiction of the settlement of their said estates, or either of them, as provided in the last-named act for approval of deeds of full-blood heirs for their inherited lands of their deceased ancestors."

The prayer was for cancellation of the several deeds and for quieting the title in the complainants, and an accounting with Chap-

man for the rents and profits during the time he had been in the possession of the land, and for general relief.

Exhibit No. 1, attached to the petition, was a general warranty deed executed by Bunnie McCosar and his wife, and Kate Gooden and her husband, and Elliott McCosar, a single man. This deed recited a consideration of "$1,800 in hand paid, the receipt of which is hereby acknowledged." Accompanying the deed was an order of approval made by the county court of Hughes county. There is a finding in the order that Ida and Eliza McCosar died in Hughes county, and that the consideration recited in the deed of October 5, 1909, to Chapman, of $1,800 "was just and equitable, and has been fully paid." There was a motion to strike three particular phrases from the petition as follows: First in line 16, "upon the alienation of their said allotments and likewise"; second, in lines 19 and 20, "all of said allotment, including said:" and from lines 21 and 22, "but said consideration was in fact unpaid as therein recited," referring to the deed to Chapman of October 5, 1909. This motion was sustained, and this ruling of the court is assigned as error. It does not appear on what ground the motion was sustained, but the ruling is supported in the brief of defendant in error on the ground that these allegations were "irrelevant" to the main issue raised, to the effect that the deeds attacked were void for want of power in the grantors to convey, and the absence of authority in the county court to approve the deed of October 5, 1909, and that the ruling was therefore justified under section 4770, Rev. Laws, 1910. It is not apparent that this ground is sound, nor does it appear that it was intended by the allegations stricken, or others contained in the petition, to attack the order of approval of the county court on the ground of fraud, as might have been done. However, it is clear that no one was prejudiced by striking out the first and second phrases. If it was intended by the third to allege that the consideration for the deed of October 5, 1909, was not paid at the time of its approval, striking this allegation from the petition harmed no one, since the payment of the consideration at the time of the approval of the deed was not necessary to the validity of the conveyance or the order of approval. In Hope v. Foley, 57 Okla. 513, 157 Pac. 727, it is said:

"That proof of the payment of a present consideration is not essential to the validity of such conveyance, but the approval of the approving agency provided in the act renders the conveyance valid, although no consideration was paid or recited in the conveyance."

We are constrained to sustain the ruling complained of, on the ground that no one was prejudiced by it.

The defendant also demurred to the petition on the ground: First, misjoinder of parties: and, second, that it did not state a cause of action, and this demurrer was by the court sustained. The plaintiffs, refusing to amend, stood upon their petition, and judgment was entered, dismissing the cause. From this judgment an appeal has been duly prosecuted to this court. The action in sustaining the demurrer is principally relied upon for a reversal of the judgment. A voluminous printed brief and argument has been filed on behalf of the plaintiffs in error in support of their contention. While this brief displays great industry and learning, much of it is not pertinent to the issues raised on this record. Much space is devoted to a discussion of the question of whether or not the land involved was an estate of inheritance or a new acquisition, and at the same time it is conceded that the allotment having been made under the Original and Supplemental Agreement, the inheritance was cast under the Creek law of descent, and that this law makes no distinction between estates of inheritance and "new acquisitions," as do the Arkansas Statutes. Nor is it important to determine whether the land was inherited by the father alone, or by the father and the brother and sister, since all joined in the conveyance to Chapman.

Again, it is argued at great length and with much industry that these allotments, being made to full-blood Indians and under the Original and Supplemental Creek Agreement, were restricted for 25 years unless the restrictions were removed by the Secretary of the Interior, the same as allotments made to living members of the Creek tribe. This question has been settled adversely to the contention of the plaintiffs in error by the Supreme Court of the United States in Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198. In the discussion of this question it is said:

"Whether these restrictions were intended to apply only to allotments made to living citizens in their own right or to apply as well to allotments made on behalf of deceased members is the question for decision. The Supreme Court of the state, when passing upon this case, held them applicable to both classes of allotments, but in the later case of Rentie v. McCoy, 35 Okla. 77 [128 Pac. 244], reached the other conclusion, as did also the District Court for the Eastern District of Oklahoma in Reed v. Welty, 197 Fed. 419. We think the better reasoning lies with the view that the restrictions apply only to allotments made to living citizens in their own right. Not only do the provisions of section 16 of the Supplemental Act lend

themselves to that view, but in those sections of both acts which deal with allotments on behalf of deceased persons, there is no suggestion of a restriction upon alienation. This difference in legislative treatment doubtless was deliberate, and reflects a corresponding difference in purpose. In Mullen v. United States, 224 U. S. 448 [32 Sup. Ct. 494, 56 L. Ed. 834], a like question arose under the original and supplemental acts relating to the Choctaw and Chickasaw lands, and we held that the restrictions upon alienation imposed by those acts were applicable to allotments to living members in their own right, but not to allotments on behalf of members then deceased. We do not perceive anything in the acts relating to the Creek lands which calls for a different conclusion."

The lands involved in this action were full-blood inherited lands. Under section 22, act of April 26, 1906 (34 Stat. at L. 137), they were alienable by the adult heirs (and all of the heirs to this land, whether it be the father alone or the brother and the sister, were adults), provided the deed was approved by the Secretary of the Interior. The deeds to the Sherman Land Company were executed while this act was in force, but were not approved by the Secretary of the Interior, and were therefore ineffectual. The deed to Chapman, however, was executed after the act of May 27, 1908 (35 Stat. at L. 312) became effective, and under section nine of this act the conveyance of full-blood Indian heirs for inherited lands was required to be approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. This court, it seems, was the county court of Hughes county, and, that court having approved the deed to Chapman, that conveyance was good, and transferred the title to the land to him, since there is nothing set up in the petition charging fraud, or anything that would tend to establish any recognized grounds for vacating the order of approval. It thus appears from the face of the petition that the title to the land in controversy was conveyed to Chapman by the deed of October 5, 1909, and no sufficient facts were alleged to avoid that conveyance and its approval by the county court. The second ground of the demurrer was therefore good, and there was no error in sustaining the same.

The other contentions made on behalf of the plaintiffs in error are fully answered by the recent decisions of this court, and it is unnecessary to go over the ground again in this case. Brader v. James, 49 Okla. 734, 154 Pac. 560; Cochran v. Blanck et al., 53 Okla. 317, 156 Pac. 324; Oates v. Freeman, 57 Okla. 449, 157 Pac. 74; and Hope v. Foley et al., 57 Okla. 513, 157 Pac. 727.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.