**SEIFFERT et al. v. JONES et al.**

No. 10160. Opinion Filed Nov. 18, 1919.

On Rehearing Feb. 17, 1920.

(Syllabus by the Court.)

**1. Statutes—Time of Taking Effect—Act of Congress.**

An act of Congress takes effect on the date of its approval by the executive, unless its operation is postponed by its own terms.

**2. Same.**

When an act of Congress contains certain provisions that are postponed to take effect at a future date, and there is no implication or expression therein that the act itself should be postponed, it will be held the act itself takes effect on the date of approval, and the only sections postponed to take effect will be those where the postponement is expressed therein, or is to be implied therefrom.

**3. Indians—Lands—Alienation—Statutes.**

As to the Five Civilized Tribes, section 1 of the Act of May 27, 1908, fixes the status of allotments as regards restriction on alienation during the lifetime of the allottee, and section 9 fixes the status of allotted lands as regards restriction on alienation after the death of the allottee, and each refers to separate and distinct subject-matters, and neither is dependent upon the other.

**4. Same—Restrictions—Statute.**

Section 9 of the Act of May 27, 1908, fixes the restrictions on alienation of allotted land of the Five Civilized Tribes after the death of the allottee, and there being no expression or inference in the section or act that it was the intent of Congress to postpone the time when said section should take effect, therefore said section became effective May 27, 1908.

On Rehearing.

**5. Same—"Restricted Lands" — Inheritance by Minors.**

Lands inherited by full-blood Choctaw Indian minors from a full-blood Choctaw allottee are not "restricted lands" within the purview of the proviso in section 6 of the Act of Congress of May 27, 1908, prohibiting the sale of incumbrance of restricted lands of living minors, except by leases authorized by law, by order of the court, or otherwise.

Action by Eastman Jones, by his guardian, Osborn Leflore, and another against H. O. Sciffert and others. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

Error from District Court, Jefferson County; Cham Jones, Judge.

W. Y. Dilley and C. S. Arnold, for plaintiffs in error.

Hatchett & Semple and Utterback & MacDonald, for defendants in error.

McNEILL, J. This action arose by Eastman Jones, a minor, through his legal guardian, Oscar Leflore, and Alice Leflore bringing suit to quiet title to an undivided one-half interest in one hundred sixty acres of land in Jefferson county. The case was tried upon an agreed statement of facts. It was agreed the land in question was patented to Isabelle Hoparkentubbi, a full-blood Choctaw, who died April 24, 1908, in Atoka county; that her sole heirs at law were Rogers Jones, her husband, and Eastman Jones, a minor, both

of whom were enrolled as full-bloods, and that each inherited an undivided one-half interest in said premises.

On July 23, 1908, in the county court of Atoka county, D. N. Robb, who was the duly appointed guardian of Eastman Jones, filed a petition to sell the land in question, and on said date an order of sale was obtained. Thereafter, on August 19, 1908, a sale was had and the same confirmed by the county court on September 7, 1908. On September 10, 1908, a guardian's deed was executed. The sale was regular in every respect and there is no charge of fraud. Both parties agree that the only issue involved is: Was section 9 of the Act of May 27, 1908, effective on the 23rd day of July, 1908, or, in other words, did section 9 of the Act of May 27, 1908, become effective at the time of the passage of the act, or not until 60 days thereafter, to wit, July 27, 1908. From a judgment in favor of plaintiffs, defendants appealed.

The general rule is, that an act of congress becomes a law at the date of the President's approval of the bill. Matthew v. Zane, 5 Law Ed. 425; Gardner v. Barnes, 18 Law Ed. 890; Leperye v. U. S., 21 Law Ed. 606; Robertson v. Bradberry, 33 Law Ed. 405.

In the case of Robertson v. Bradberry, 33 Law Ed. 405, the court, discussing the question, used the following language:

"The law itself went into immediate effect, although it is true, various provisions of it, contained in other sections, were postponed to take effect, some on the first of July and some on the first of May, but where such postponement was intended, it was expressed and only referred to the parts that were so postponed. It did not affect the section in question."

In the case of U. S. v. Chong Sam, 47 Fed. 874, the court had under consideration the construction of an act of Congress amending the Chinese Exclusion Act. Section 1 was as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled: That from and after the date of the exchange of ratifications of the pending treaty between the United States of America, and His Imperial Majesty, the Emperor of China, signed on the 12th day of March, Anno Domini, eighteen hundred and eighty-eight, it shall be unlawful for any Chinese person, whether a subject of China or of any other power, to enter the United States except as hereinafter provided."

The court, passing on the question, stated as follows:

"It is well settled that a statute takes effect on the day of its approval by the executive, and includes that day, unless its opera-tion is postponed by its own terms. (Citations). The phraseology of section 13, the express language of section 5, and the absence of implication as well as reason to the contrary, require section 13 to be held as in force from the passage of the act. The contingency which postpones other sections does not affect it."

Other cases supporting this principle are Osborn v. Charlevoix. Circuit Judge, 114 Mich. 655, 72 N. W. 982; State ex rel. Rhode v. Indiana Board of Pharmacy, 155 Ind. 414, 58 N. E. 531.

The question then presented is, does the provision in section 1, which postpones said section 1 from becoming effective for sixty days, also refer to and postpone section 9 for a like period of time? There is no expression in section 9 which could be construed to imply that it was the intention of Congress that section 9 should not become effective until sixty days after approval. If section 1 and section 9 both cover the same subject-matter, and both sections are related, and one depends upon the other, then the postponement of one section might postpone the other, or the intention to defer the other might be presumed. But on the other hand, if the sections relate to different subject-matters and are not related, nor one dependent upon the other, then the postponment of one section would not postpone the other, unless so expressed in the act. This court has practically settled this question in the case of Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259, wherein the court, speaking through Mr. Justice Rainey, on page 264, said:

"It will be noted that section 1 fixes the status of allotted lands as regards the restrictions on alienation during the lifetime of the allottee, and that section 9 fixes the statute of allotted lands as regards restrictions after the death of the allottee."

The position taken that the sections refer to different subject-matters is also supported by the different decisions of this and the United States courts upon the question. An examination of the different treaties and agreements discloses the fact that the restriction on alienation of allotments of living Indians has always been treated separately from the restriction on alienation of lands after the death of the allottee. This distinction has been recognized in the following cases:

McCosar v. Chapman, 59 Okla. 78, 157 Pac. 1059 (Creek Agreement); Skelton v. Dill, 235 U. S. 206, 59 Law Ed. 198 (Creek Agreement); Mullen v. U. S., 224 U. S. 448, 56 Law Ed. 834 (Choc-Chick Agrt.); Smith v. Sumpsey, 64 Oklahoma, 166 Pac. 1094 (Seminole Agreement); Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259 (Act of May 27, 1908).

Is it not reasonable to presume from the fact that Congress had always dealt separately with the restrictions on alienation of lands allotted to living Indians and the restrictions on alienation after the death of the allottee that it intended to continue to recognize such distinction in the passage of the Act of May 27, 1908, unless it has expressed some intention to the contrary? Therefore, if section 9 deals solely with the subject of the restriction on alienation of lands after the death of the allottee, and there is no expression in the section or act which in any way can be construed to postpone the section from becoming effective, at the time of its approval, it must be presumed that Congress intended said section to become effective immediately upon its approval.

It was suggested in the oral argument that it would be useless to put section 9 in effect immediately unless section 3 of the act was also effective immediately. Section 3 provides that the enrollment records shall be conclusive evidence as to blood and age of the allottee. We know of no decision that has held that section 3 did not go into effect immediately after the passage of the enactment.

This court has in several instances stated, in construing sections 1, 3, and 6, that all of said sections should be taken together in construing said sections, but in no case is our attention called to a decision passing on the question of when section 3 became effective. In construing section 9, it should be considered in connection with all the other sections to determine the intention of Congress. There is nothing in any of the sections from which it can be inferred that section 3 or section 9 should not be effective immediately after its approval. While it is not necessary for us to determine when section 3 became effective, it is sufficient to say there is no expression either in the act or in section 9 nor reason given why said section should not be in force immediately after approval. Congress has seen fit to use no words nor give any expression that could be construed to mean that it intended to postpone the time when said section should become effective. It will therefore be presumed that it intended the general law on said subject was applicable and should apply.

This being an equitable action, there being no question of fact to be determined but simply a question of law, the trial court having failed to render the proper judgment. this court may on appeal render the judgment the trial court should have rendered.

For the reasons stated, the case is reversed and remanded with instructions to dismiss plaintiffs' petition and render judgment for the defendants.

OWEN, C. J., and PITCHFORD, HIGGINS, and BAILEY, JJ., concur.

### On Rehearing.

McNEILL, J. It is contended upon the second petition for rehearing that the county court had no jurisdiction and was without authority to sell the land, for the reason the same was restricted land of a living minor and by reason of the proviso of section 6 of the Act of May 27, 1908, which provides as follows, to wit:

"Provided, that no restricted land of living minors shall be sold or incumbered except by leases authorized by law, by order of the court, or otherwise."

This court has passed upon this question contrary to the contention of the defendants in error in the case of Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259:

"Lands inherited by full-blood Creek Indian minors from a full-blood Creek allottee are not 'restricted lands' within the purview of the proviso in section 6 of the act of Congress of May 27, 1908, prohibiting the sale of incumbrance of restricted lands of living minors, except by leases authorized by law, by order of the court, or otherwise."

Said case was appealed to the Supreme Court of the United States, and a writ of error was denied by said court. The case of Harris v. Bell, 250 Fed. 209, supports the holding of this court in the case of Chupco v. Chapman.

For the reason stated, the former opinion is adhered to, and the second petition for rehearing is denied.

RAINEY, V. C. J., and KANE, PITCHFORD, JOHNSON, and HIGGINS, JJ., concur.