## COMBS v. JOHNSON et al.

No. 11270—Opinion Filed Sept. 25, 1923.

**1. Appeal and Error—Questions Presented—Admission in Brief.**

Where counsel for the respective parties in their briefs in this court agree that there is but one question to be presented to this court for consideration and decision, this court will decide the case on the proposition so submitted, regardless of the other question that might be raised in the case.

**2. Taxation—Indian Land—Power to Tax.**

The power to tax inherited Indian land is coincident with and dependent upon the removal of restrictions upon alienation, and prior to the approval of conveyances of full-blood Indian heirs under the provisions of the act of May 27, 1908, by the proper court, the power to tax said lands does not exist.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by A. J. Combs against B. Johnson and B. B. Jones. Judgment for defendants, and plaintiff appeals. Affirmed.

Defendants in error have stated in their brief:

"That the brief of counsel for plaintiff in error contains a full and clear statement of facts and pleadings so far as material for consideration of the question under review, we will content ourselves with a very brief statement of salient facts for convenient consideration of the argument."

We will, therefore, adopt the statement contained in plaintiff in error's brief as a statement of facts in this case.

Plaintiff in error, as plaintiff below, on December 14, 1919, commenced this action by filing in the district court of Creek county, Okla., his petition in ejectment against one B. Johnson alleged to be in possession of the lands in controversy claimed to be owned by plaintiff. Attracted to the petition as exhibit "A", and as a part thereof, is a copy of a tax deed executed by the county treasurer of Creek county, Okla., to A. H. Purdy and A. J. Combs, April 3, 1914, conveying to grantees the land in controversy for the unpaid taxes for the year 1909, for which the land had been sold at a tax 'sale' November 24, 1911. And attached to said petition as exhibit "B" and made a part thereof is a copy of a deed from A. H. Purdy, executed April 6, 1914, conveying all his right, title, and interest in the land in controversy to the plaintiff, A. J. Combs.

The defendant, Johnson, answered that he was in possession of said premises as the tenant of one B. B. Jones. On application of B. B. Jones to be made a party defendant and an order of the court sustaining his application, B. B. Jones was made a party defendant, and filed his answer and cross-petition, averring, among other allegations therein contained: First, this defendant admits that B. Johnson, defendant in this case, was, and is, in the possession of the land described in the petition in this case, but avers that said Johnson occupies said land as lessee of this defendant as landlord, and that the possession thereof, by said Johnson, is in law and in fact the possession of this defendant, who is, and claims to be, the sole owner of the legal and equitable estate in and to said land.

This defendant denies that the plaintiff has any right, title, or interest in and to said lands, or is entitled to the possession

thereof, and denies each and every allegation of said petition therein contained, not hereinbefore expressly admitted.

And further answering, this defendant says: It appears from the exhibits filed with the petition of the plaintiff that said plaintiff claims title to, and the right to possession of, the west half (½) of the southeast quarter (¼) of section twenty-one (21), township fifteen (15) north, range nine (9) east, situated in Creek county, Okla., by virtue of a tax deed executed on the _____day of_____ by_____ treasurer of said county.

The defendant says that said plaintiff ought not to maintain this action for the reason that said deed is void, and of no effect, and could not, and did not, operate to convey to plaintiff and his grantor, the said land for the following reasons: The said property sought to be deeded as aforesaid was not subject to taxation for the year 1909, as stated therein.

In support of this allegation, defendant says that said land was a portion of the allotment of one Willie Thomas, deceased, who was duly enrolled as a full-blood member of the Creek Tribe of Indians, opposite number 9527 of the rolls compiled by the Commissioner to the Five Civilized Tribes.

That said Willie Thomas died during infancy, without issue, previous to receiving his allotment, and that said land was selected and set apart to said Willie Thomas, deceased, on September 3, 1902, and thereafter conveyed by patent to his heirs, dated and duly executed on March 26, 1904, by Porter, principal chief of the Creek Nation, under approval of the Secretary of the Interior Department of the United States Government.

That said Willie Thomas, who was born out of wedlock, at the time of his death and at the time of the selection and the issuing of the patent, was survived by Waitie Thomas and Polly Wesley, father and mother, respectively, as his sole heirs at law, if the said Waitie Thomas be an heir, if not, by his mother, as his sole heir, both of whom were citizens of said Creek Tribe of Indians, and duly enrolled as full-blood members thereof.

That on the 3rd day of September, 1902, the date of the selection of said lands, the said Waitie Thomas and Polly Wesley became seized and possessed of the equitable title to said lands, and thereafter on the 26th day of March, 1904, became seized of the legal estate in fee simple as such heirs at law, and that neither the said Waitie Thomas nor Polly Wesley ever conveyed or attempted to convey said lands or any part thereof until the 3rd day of August, 1907, subsequent in time to the passage and approval of the Act of April 26, 1906, after which, August 3, 1907, Polly Wesley, mother of said deceased allottee, undertook to convey said land to Manford Land Company of Muskogee, Indian Territory, and on the 28th day of said August, the said Waitie Thomas undertook to convey the said land to Wetumka Oil Mine Development Company of Wetumka, Indian Territory.

That neither of said deeds were approved by the Secretary of the Interior, nor by the county court having jurisdiction of the estate of Willie Thomas, deceased.

That subsequent to said conveyances, no conveyances were made by said Polly Wesley or Waitie Thomas covering the said lands until the 15th day of June, 1912, when the said Polly Wesley, together with one John Wesley, her husband, conveyed the same to this defendant by deed duly executed and delivered of that date wherein the name of this defendant as grantor appears as Bernard B. Jones, which said deed was duly approved by the county court of McIntosh county, which said court had jurisdiction of the estate of said Willie Thomas, deceased, and until the 20th day of June, 1912, when the said Waitie Thomas, by his deed of that date, made and executed under the approval of said county court, conveying to this defendant as Bernard B. Jones, all his right, title, and interest in and to said described land.

This defendant avers and charges that the deed executed on August ——, 1907, by Polly Wesley, as aforesaid, and the deed executed August 28, 1907, by Waitie Thomas, as aforesaid, did not operate to convey any estate in and to said lands for the reason that same were executed after the passage and approval of said Act of Congress of April 26, 1906, requiring the approval of the Secretary of the Interior as a condition to the alienation, and that the title to said lands remained in said Polly Wesley and Waitie Thomas until the date of said last mentioned deeds executed to this defendant as Bernard B. Jones, and that the title to said lands was vested with restrictions upon the alienation, and were not subject to taxation for the year 1909. To this cross-petition plaintiff filed an answer substantially as follows:

"First. The plaintiff denies each and every allegation of said cross-petition except such as is hereinafter admitted.

"Second. It is admitted that plaintiff has a tax deed, but denies that the same is void

on any of the grounds set forth in the cross-petition.

"Third. It is admitted that the lands in controversy in this action were allotted to Willie Thomas, a full-blood Indian, whose roll number is 9527, and that the said Willie Thomas died without issue, and unmarried previous to receiving his allotment, and in this connection plaintiff avers that the said Willie Thomas died on the 25th day of July, 1901, or thereabouts, and it is admitted that selection of the above allotment was made on September 3, 1902, and patent issued to the heirs of Willie Thomas on March 26, 1904; and it is admitted that the father and mother of Willie Thomas, to wit, Waitie Thomas and Polly Wesley, are the sole heirs at law of the said Willie Thomas and were full-blood Creek Indians and are so enrolled.

"It is further admitted that the said Waitie Thomas and Polly Wesley did not convey or attempt to convey said land prior to the 3rd day of August, 1907, and in this connection allege that on the 3rd day of August, 1907, that said lands were unrestricted, and that on said date the said Waitie Thomas and Polly Wesley conveyed said lands to the Manford Land Company who thereafter conveyed the same to the cross-petitioner herein B. B. Jones.

"And it is alleged that said heirs conveyed said land while same was unrestricted to Wetumka Oil Mine Development Co. on August 28, 1907, who thereafter, in 1916, conveyed to B. B. Jones; and it is admitted that said deeds were not approved by the Secretary of the Interior, nor by any county court of the state of Oklahoma.

"Fourth. It is admitted that Polly Wesley, together with one John Wesley, on the 15th day of June, 1912, made a deed covering the said lands in controversy in this action, to B. B. Jones, which deed was approved by the county court of McIntosh county, and in this connection plaintiff denies that said deed has any validity or force and effect in law and conveyed any title, for the reason that the lands were unrestricted and had been previously conveyed to the Manford Land Company, and for the further reason that said approval was null and void.

"Further answering, this plaintiff alleges that said lands were unrestricted during the year 1909, for purposes of taxation, and that the same were properly and legally placed upon the tax rolls of Creek county, Oklahoma, and in due course of time and law sold for taxes and deed issued therefor to this plaintiff, who became seized of the legal title to said land by the issuance of said tax deed by the treasurer of Creek county, Oklahoma, and that this plaintiff is now the owner of said land and is entitled to the immediate possession thereof."

Thereupon defendant, B. B. Jones, filed a motion for judgment on the pleadings, and plaintiff filed a motion for judgment on the pleadings. The court overruled plaintiff's said motion, and sustained the motion of said defendant for judgment on the pleadings and rendered judgment as prayed for in defendant's cross-petition, to all of which rulings and judgment the plaintiff duly excepted.

Cheatham & Beaver and Johnson & Harris, for plaintiff in error.

Thrift & Davenport, for defendants in error.

Opinion by MAXEY, C. Plaintiff in error takes up the proposition that the court erred in sustaining defendant's motion for judgment on the pleading, and insists that for the purposes of said motion all the material allegations of plaintiff's pleading must be taken as true, and only those allegations of defendant's cross-petition may be taken as true as are by the answer of plaintiff to such cross-petition specifically admitted. In other words his proposition is, that where the answer denies material allegations in the complaint and an issue of fact is raised, it is error to grant a motion for judgment on the pleading, citing cases in support of this proposition. But after raising this question, counsel for plaintiff in error make the following statement in their brief:

"The sole question presented for determination is: Was the land in controversy owned by a full-blood Creek Indian allottee, exempt from taxation for the year 1909?"

Counsel for defendant in error, on page four of their brief, quote the above proposition and say they concur in the proposition as stated by counsel for plaintiff in error. So that it is clear from the statement of the parties that it is their desire that the only question that this court is to consider and pass on is whether, under section 9 and other sections contained in the Act of May 27, 1908, land inherited by full-blood Indian heirs from a full-blood Creek Indian allottee is taxable in the hands of the heirs before they convey the same, with the approval of the county court of the proper county. So that an answer to this question is decisive of the question raised by counsel in their brief. It is contended by plaintiff in error that it was the intention of Congress, that only so long as the title to allotted land remained in the original allottee was such land to be exempt from taxation, and quotes section 22 of the Act of April 26, 1906, which reads as follows:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made or to whom a deed or patent has been issued for his

or her share of the lands of the tribe * * * may sell and convey the lands inherited from such decedent."

He also quotes part of section 9 of the act of May 27, 1908, which is as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land."

In support of their contention, they cite the case of Jones, Gdn., et al. v. Howard et al., 88 Okla. 242, 212 Pac. 986, quoting the third subdivision of the syllabus of said case, which reads as follows:

"Section 9 of the act of May 27, 1908, upon compliance with its terms, obviously removed all remaining restrictions upon the right to alienate inherited lands by a full blood Seminole Indian, regardless of the issuance and delivery of patent."

We have read this case and we got very little light on the subject from it, as the question there involved was the right to convey inherited land by full-blood Indians before the issuance and delivery of the patent. Counsel also cite the following cases in support of this contention that the land was taxable in the year 1909; Chupco v. Chapman, 76 Okla. 120, 170 Pac. 259; Seiffert v. Jones, 77 Okla. 204, 186 Pac. 472. These cases tend to support the theory of plaintiff in error, with a great many other cases from this court, but in none of these cases does the court decide the exact question of when the inherited lands of a full-blood allottee, and whose heirs are full-blood Indians, become taxable. Judge Rainey in the case of Chupco v. Chapman, supra, delivered quite an exhaustive opinion and reviews the cases from this court and reaches the conclusion that by the terms of section 9 of the act of May 27, 1908, death of an allottee operated to remove all restrictions upon the alienation of said allottee's land. If the heirs or any of them are Indians of less than one-half blood, they are authorized to sell and convey the lands, so inherited by them, without any supervision. But the heirs enrolled as full-blood are authorized to sell and convey their interest in such inherited land only upon the approval of the conveyance by the court having jurisdiction of the settlement of the estate of the deceased allottee. Since said restrictions are personal to the full-blood Indian heirs and do not run with the land, such inherited land in the hands of full-blood Indians is not restricted land within the meaning of the term as found in proviso of section 6 of the Act of May 27, 1908.

This I think is a fair statement of the contention of counsel for plaintiff in error.

The land in question in this case was the allotment of Willie Thomas, who died in infancy, without issue. His father and mother, Polly Wesley and Waitie Thomas, were his sole heirs at law and were full-blood Indians. They did not convey the land in question with the approval of either the Secretary of the Interior of the county court, until the 15th day of June, 1912, when they conveyed the land to the defendant, B. B. Jones, and said conveyance was approved by the county court of McIntosh county, that being the court having jurisdiction over the administrator of Willie Thomas' estate. Defendant in error claims title under that deed, and plaintiff claims title under a tax deed issued to him by the county treasurer of Creek county for the taxes of the year, 1909. The validity of these deeds is not questioned, so far as the regularity of the proceedings under which they were obtained is concerned. But the contention of the plaintiff in error is that the lands were taxable for the year, 1909, as, according to their contention, the land was unrestricted at that time. The contention of defendant in error is that the lands were restricted in 1909 and continued to be restricted lands in the hands of full-blood heirs of a full-blood allottee until the 15th day of June, 1912, when they were conveyed with the approval of the county court of McIntosh county.

As heretofore stated, the cases cited from this court by plaintiff in error by analogy would seem to support their contention, but this court has decided the question squarely against the contention of plaintiff in error in Marcy v. Board of Commissioners of Seminole County et al., 45 Okla. 1, 144 Pac. 611. In this case the court says:

"The power to tax inherited Indian land is coincident with and dependent upon the removal of restrictions upon alienation; and, prior to the approval of conveyance of full-blood Indian heirs under the provision of said act by the proper court, the power to tax said lands does not exist."

In the body of the opinion, the court says, from the language of the act:

"That all land from which restrictions have been or shall be removed shall be subject to taxation, it is clear that the power of the state to tax the lands in question is coincident with and dependent upon the unrestricted right of the owner to sell the same."

The power to tax, and right to convey, are granted by the same act, become effective upon the same condition and at one and the same time; the former cannot exist without the latter.

It follows that restrictions upon the alienation of the lands involved are removed only upon compliance with the terms of the pro-

viso requiring the approval of conveyances of full-blood heirs by the county court having jurisdiction of the settlement of the allottee's estate. This is a necessary condition precedent to the power of the state to subject such lands to taxation, and not having been complied with, all proceedings for the purpose of enforcing collection of taxes on said lands are void:

It will be seen that this court has decided the question squarely against the contention of the plaintiff in error. The United States court for the Eastern district of Oklahoma in the case of United States v. Shock, 187 Fed. 870, holds that the lands are not taxable until after they have been conveyed by the heirs, with approval of the proper county court.

Another case against the contention of plaintiff in error is a case from the Supreme Court of the United States, Parker v. Richard, 250 U. S. 235. Justice Van Devanter delivered the opinion of the court and holds that the lands are not taxable in the hands of full-blood Indian heirs, nor are they taxable until after they have conveyed the same with the approval of the county court. In the body of the opinion, Justice Van Devanter says:

"In cases presenting the question whether lands inherited from allottees by full-blood Indian heirs are freed from restrictions by section 9, and thus brought within another provision in the same act declaring that land 'from which restrictions have been or shall be removed' shall be taxable and subject to other civil burdens, the Supreme Court of the state and the federal court of that district have both held that under the proviso such land remains restricted in the hands of the full-blood heirs, and so is not within the taxing provision. Marcy v. Board of Commissioners, supra; United States v. Shock, 187 Fed. Rep. 870."

Entertaining a like view of the proviso, we conclude that the land covered by the lease is still restricted land.

It will be seen that the Supreme Court of the United States has held squarely that inherited land in the hands of a full-blood Indian heir is not taxable until after it has been sold by said heirs, with the approval of the county court, etc.

It is seen from the above quotation that the case of Marcy v. Board of County Commissioners, supra, and United States v. Shock, 187 Fed. Rep. 870, are cited, with approval, and it seems to us that this being a federal statute, we are bound by the construction placed on that statute by the Supreme Court of the United States.

We, therefore, hold that the allotment of a full-blood allottee in the hands of his full-blood heirs is not taxable until after said heirs have conveyed the same in accordance with the act of May 27, 1908, which requires that the deed of said full-blood heirs must be approved by the county court having jurisdiction of the estate of the deceased allottee before they become taxable.

Entertaining these views, we hold that the court did not err in sustaining the motion for judgment on the pleadings, and the judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.