## SHARUM v. ANTHIS et al.

No. 16167—Opinion Filed Jan. 19, 1926.

(Syllabus.)

**1. Statutes—Congressional Acts—When Effective.**

An act of Congress takes effect on the date of its approval by the executive, unless its operation is postponed by its own terms.

**2. Same—Postponement of Effect of Certain Provisions.**

When an act of Congress contains certain provisions that are postponed to take effect at a future date, and there is no implication or expression therein that the act itself should be postponed, it will be held the act itself takes effect on the date of approval, and the only sections postponed to take effect will be those where the postponement is expressed therein, or is to be implied therefrom.

**3. Same—Indians—Act Making Enrollment Records Conclusive of Age of Allottees.**

Section 3 of the Act of Congress of May 27, 1908 (35 U. S. Stats. at L. 313), providing that the rolls of citizens and freedmen of the Five Civilized Tribes, approved by the Secretary of the Interior, shall be conclusive evidence as to the age of said citizen or freedman, and there being no expression or inference in the section or act that it was the intent of Congress to postpone the time when said section should take effect, said section became effective May 27, 1908.

Error from District Court, Rogers County: C. H. Baskin, Judge.

Action by A. H. Sharum against James M. Anthis and others. Judgment for defendants, and plaintiff brings error. Reversed and rendered.

Archibald Bonds, for plaintiff in error.

Ernest R. Anthis and Noffsinger & Harris, for defendants in error.

PHELPS, J. This cause comes to us from the district court of Rogers county, the facts out of which it grew being substantially as follows:

Bessie Warren, nee McCullough, was enrolled as a Cherokee freedman opposite Roll No. 1503, and there was allotted and patented to her as her share of the tribal lands of the Cherokee Nation the land the title to which is in controversy here, consisting

of 100 acres, 40 acres of which was allotted to her as her homestead and the remaining 60 acres as surplus. On July 16, 1908, said Bessie Warren, nee McCullough, executed and delivered to J. H. Childers, one of the defendants, a deed conveying this 100 acres of land to him, and on the 21st day of July, 1908, she executed another deed conveying the same lands to the same J. H. Childers, in which last-named deed she was joined by her husband, Isaac Warren, and on the 31st day of July, 1908, she, together with her husband, executed still another deed conveying the lands in question to the defendants, James M. Anthis, J. H. Childers, and Charles Olentine, all of which deeds were placed of record in Rogers county.

On the 20th day of April, 1910, she executed a deed conveying the lands in question to A. H. Sharum, plaintiff in error herein, and September 18, 1923, Sharum brought suit against Anthis, Childers, Olentine, and others, alleging ownership to the land and praying judgment of the court quieting title in him. Defendants filed their answer and cross-petition, alleging ownership under their deeds and praying that title be quieted in them, and to their cross-petition plaintiff filed his answer, alleging that the deeds relied upon by defendants were executed before said Bessie Warren, nee McCullough, reached her majority; further alleging that she reached her majority on the day, or the day before, she executed the deed to plaintiff.

To the plaintiff's answer to the defendants' cross-petition he attaches a journal entry of the county court of Rogers county, showing that on October 19, 1912, judgment was rendered in his favor in an action wherein the defendants in error were seeking to oust him from possession of the land in question.

The cause was tried to the court and judgment rendered in favor of plaintiff quieting his title to the 40 acres constituting the homestead allotment, and quieting the title to the remaining 60 acres in the defendants, and to reverse the latter part of said judgment this appeal is prosecuted.

It is conceded by both sides that the only question for our determination here is the construction to be placed upon section 3 of the Act of Congress of May 27, 1908 (35 U. S. Stats. at L. 313). It is contended by plaintiff in error that this section of that act became effective upon the passage and approval of the act on May 27, 1908, while it is the contention of defendants in error that section 3 of said act did not go into full

114-3

force and effect until 60 days after its passage and approval. The parts of the act pertinent here are sections 1 and 3. Section 1 (35 U. S. Stats. at L. 312) reads as follows:

"Be It Enacted by the Senate and House of Representatives of the United States of America in Congress Assembled: That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions or alienation or incumbrance, as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood, including minors, shall be free from all restrictions. * * *"

And section 3 reads as follows:

"That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act, and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman. * * *"

Practically all the evidence introduced in the trial court was the deeds relied upon and the enrollment records showing the age of the grantor, and the trial court held, in effect, that since the surplus allotment of a Cherokee freedman was alienable under the Act of April 21, 1904, and section 3 of the Act of May 27, 1908, did not go into force and effect until 60 days after its passage and approval, and the plaintiff having alleged the grantor's minority as a ground for the cancellation of the deeds made by her on July 16th and July 22nd and introduced no evidence in support thereof, except the record of the tribal rolls, as to her age, which records were not conclusive as applied to transactions taking place prior to the taking effect of the Act of May 27, 1908, that the evidence so introduced was not sufficient to overcome the legal presumption of the validity of the deeds and of the capacity of the grantor to convey, and found that as to such surplus allotment good title was conveyed by such deeds, but further found that the homestead allotment was not alienable until made so when the Act of May 27, 1908, went into effect, which, the court held, was 60 days after its passage and approval on May 27, 1908, and according to the provisions of that act the allotment rolls are conclusive as to the age of the allottee, and the records thus introduced showing that on April 20, 1901,

the grantor, Bessie Warren, nee McCullough, was 9 years of age, that her deed executed in July, 1908, could not be effective as a conveyance because of her minority, and that consequently she conveyed no title to the homestead allotment, but that her deed of April 20, 1910, conveying the homestead allotment to A. H. Sharum, the plaintiff, having been executed after she had reached her majority as shown by the rolls, was valid, and that as to such homestead allotment plaintiff was entitled to judgment decreeing good title in him.

Therefore, in reaching our conclusions in this case, it is necessary for us to determine whether the provision in section 1 of this act reading "That from and after 60 days from the date of this act" refers only to the things enumerated in said section 1, which deals primarily with the removal of restrictions upon the sale of lands, or whether this provision applies to each of the 14 sections of such act. If this act did not go into effect until July 27, 1908, 60 days after its passage and approval, it would not affect the defendants' deeds taken on July 16th and July 21, 1908. In other words, if section 3 of the act of May 27, 1908, making the enrollment records conclusive as to the age of the allottee, did not become effective until after the defendants procured their deeds, quite naturally the defendants would not be bound by the provisions of the act, but if said section 3 went into effect immediately upon its passage and approval, May 27, 1908, the enrollment records are conclusive that the grantor-allottee was under 18 years of age at the time the deeds were executed to defendants.

We cannot agree with the contention of counsel and the finding of the trial court that the provision of section 1, declaring "That from and after 60 days from the date of this act," as applied to the things enumerated in said section 1, is also applicable to section 3. There is no more reason for contending that section 3 was postponed for 60 days than for contending that section 9 was postponed for 60 days. Section 9 reads as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's lands."

And in Seiffert v. Jones, 77 Okla. 204, 186 Pac. 472, this court had under consideration the question, among others, as to the time the above-quoted section of the act took effect, and in the first, second, and fourth paragraphs of the syllabus said:

"An act of Congress takes effect on the date of its approval by the executive, unless its operation is postponed by its own terms.

"When an act of Congress contains certain provisions that are postponed to take effect at a future date, and there is no implication or expression therein that the act itself should be postponed, it will be held the act itself takes effect on the date of approval, and the only sections postponed to take effect will be those where the postponement is expressed therein, or is to be implied therefrom."

"Section 9 of the Act of May 27, 1908, fixes the restrictions on alienation of allotted land of the Five Civilized Tribes, after the death of the allottee, and there being no expression or inference in the section or act that it was the intent of Congress to postpone the time when said section should take effect, therefore said section became effective May 27, 1908."

To the same effect is the holding in Hays v. Wood, 110 Okla. 45, 236 Pac. 3.

Guided by the above authorities, we conclude that section 3 of said act was in full force and effect at the time the deeds to defendants were executed by the allottee-grantor, and that the grantor, being under the age of 18 years, conveyed no title by the execution and delivery of such deeds.

The judgment of the trial court upholding the validity of the deeds to the surplus allotment is, therefore, reversed, and judgment is hereby rendered quieting title to all the lands in question in plaintiff, A. H. Sharum, by virtue of his deed dated April 20, 1910.

NICHOLSON, C. J., and HARRISON, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 36 Cyc. p. 1179; 25 R. C. L. p. 799. (2) 36 Cyc. p. 1201; 25 R. C. L. p. 799. (3) 31 C. J. p. 514.