**PLUTO OIL & GAS CO. et al. v. MILLER.**

No. 10870—Opinion Filed January 30, 1923.

Rehearing Denied October 9, 1923.

(Syllabus.)

1. **Indians—Oil Lease—Necessity for Approval by Court—Statute.**

An oil and gas mining lease executed by a full-blood heir of a deceased Creek Indian allottee upon his inherited lands is such a conveyance of an interest in said lands that to be valid the same must be approved as required by section 9 of the Act Cong. May 27, 1908, c. 199, 35 Stat. 315.

2. **Same — Restrictions on Alienation—Construction of Statutes.**

As to the Five Civilized Tribes, section 1 of the Act Cong. May 27, 1908, fixes the status of allotments as regards restrictions on alienation during the lifetime of the allottee, and section 9 fixes the status of allotted land as regards restrictions on alienation after the death of the allottee; each refers to separate and distinct subject-matters, and neither is interdependent upon the other.

3. **Statutes—Construction—Provisos.**

The natural and proper office of a proviso is to restrain or qualify some preceding matter, and will ordinarily be confined to what precedes it, except (a) where it clearly appears to have been intended to apply to some other matter; (b) unless from the reading of the entire statute the context requires it to be considered tantamount to an independent enactment.

4. **Indians—Oil Leases—Approval—Statutes.**

The proviso of section 2 of Act Cong. May 27, 1908, c. 199, 35 Stat. 315, which provides: "Provided: That leases of restricted lands for oil, gas or other mining purposes * * * may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise," relates to restricted lands referred to in section 1 of said act, and has no application to inherited lands of full-blood heirs referred to in section 9.

5. **Vendor and Purchaser—Waiver of Rights by Defrauded Party—Effect on Subsequent Creditors and Purchasers.**

Where a party has waived, or omitted to exercise, the right to institute proceedings to recover lands of which he has been defrauded, such right does not inure to the benefit of subsequent creditors or purchasers.

6. **Indians—Validity of Oil Leases—Judgment on Pleadings.**

Record examined, and held, the court did not err in rendering judgment upon the pleadings.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by H. C. Miller against the Pluto Oil & Gas Company to enforce rights under oil and gas lease to Indian land (Henry Land and Salina Land intervening). Judgment for plaintiff on the pleadings, and defendant and interveners bring error. Affirmed.

H. B. Martin, for plaintiffs in error.

McDougal, Lytle, Allen & Pryor, R. K. Robertson, and Ben Braden, for defendant in error.

James B. Diggs, Rush Greenslade, and William C. Liedtke, amici curiae.

McNEILL, J. To reverse a judgment rendered on the pleadings adjudging an oil and gas lease executed by a guardian upon the allotment of a duly enrolled Creek minor of three-fourths Indian blood, which lease had been approved by the county court, invalid, because the same was not presented to nor approved by the Secretary of the Interior, and a further judgment holding a subsequent oil and gas lease executed after the death of the said minor allottee, by a full-blood heir upon the same land, and approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, valid, although not approved by the Secretary of Interior, the lessee of the first lease has appealed to this court.

The brief of plaintiff in error does not refer to the decision of the court adjudging the lease held by it, invalid, because the same was not approved by the Secretary of Interior, so we will presume that part of the judgment correct. The plaintiff in error, however, contends that the subsequent lease, executed by the full-blood heir and approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, is invalid, because not approved by the Secretary of Interior, and further contends that Miller, the lessee, obtained the lease by fraud and trickery, and did not come into court with clean hands, and a court of equity will not grant him any relief nor cancel the first lease, although invalid.

The first proposition for consideration of the court may be stated as follows:

"Is an oil and gas lease executed by the full-blood heir of a Creek Indian upon his inherited land valid when approved by the county court having jurisdiction of the settlement of the estate of the deceased Indian from whom the land is inherited?"

Or it may be stated otherwise:

"Is the approval by the Secretary of Interior necessary to the validity of an oil and gas mining lease covering inherited Indian lands of an adult full-blood Creek Indian?"

It is the contention of the plaintiff in error that the inherited lands of the full-blood members of the Creek Tribe or Nation are restricted lands, and the leasing of said land is controlled by the proviso to section 2 of Act Cong. 27, 1908, c. 199, 35 Stat. 315, which proviso is as follows:

"Provided: That leases of restricted lands for oil, gas or other mining purposes * * * may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise."

Plaintiff in error contends the Supreme Court of the United States in the case of Parker v. Richards, 250 U. S. 235, 63 L. Ed. 954, settled this question, and held an oil and gas lease upon the inherited lands of a full-blood adult heir must be approved by the Secretary of Interior. The contention of the defendant in error may be stated as follows:

"That an oil and gas lease executed by a full-blood adult heir of a deceased Creek Indian, duly approved by the county court having jurisdiction of the estate of the deceased Indian from whom said land is inherited, is valid, without the approval of the Secretary of Interior, because it is authorized by section 9 of the act of Congress of May 27, 1908, which provides: That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land; provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.'"

The contention of defendant in error is the same as announced in the case of Hoyt v. Fixico, 71 Oklahoma, 175 Pac. 517, wherein this court stated as follows:

"An oil and gas mining lease executed February 11, 1915, by a full-blood heir of a deceased Creek Indian allottee, is a 'conveyance of an interest' in said lands, and is void unless approved as required by section 9, act Cong. May 27, 1908, c. 199, 35 Stat. L. 315.

"An oil and gas mining lease of such land executed by a guardian of a minor full-blood heir of such deceased allottee, on March 2, 1912, for a period of years extending beyond the majority of his ward, which lease was duly approved, is valid."

The above case has been cited and approved as supporting the principle, "that an oil and gas lease is a conveyance of an interest in land," in the cases of Rich v. Doneghey, 71 Oklahoma, 177 Pac. 86; Garfield Oil Co. v. Champlin, 78 Okla. 91, 189 Pac. 514; Brunson v. Carter Oil Co., 259 Fed. 656. See, also, Eldred v. Okmulgee Loan & Trust Co., 22 Okla. 742, 98 Pac. 929.

This court, in the case of Carter Oil Co. v. Popp, 70 Oklahoma, 174 Pac. 747, held, in substance, that an oil and gas lease is

such a grant of the use and occupancy of the homestead as requires the joint consent of both husband and wife. This case was approved by this court in the cases of Treese v. Shoemaker, 80 Okla. 235, 195 Pac. 766, and Francen v. Oklahoma Star Oil Co., 80 Okla. 103, 194 Pac. 193.

The Circuit Court of Appeals, in the case of Parker v. Riley, 243 Fed. 42, 155 C. C. A. 572, had occasion to construe the act of May 27, 1908, with reference to an oil and gas mining lease, and held that such a lease was an alienation within the meaning of said act.

The Supreme Court of the United States in the case of United States v. Noble, 237 U. S. 74, 59 L. Ed. 844, held that an assignment of rents and royalties accruing under an oil and gas lease was a conveyance of an interest in the land. The cases are all uniform in holding that an oil and gas lease is an alienation of land within the meaning of the act of May 27, 1908, and when covering lands restricted under section 1 of the act must be approved by the secretary, and when covering the inherited lands of a full-blood adult, must be approved as provided in section 9, and there are no cases to our knowledge holding to the contrary.

It is conceded that the proviso in section 2 is controlling, regarding oil and gas leases executed by the allottee during his lifetime upon his allotment, said allotment being restricted land within the meaning of section 1 of the act of May 27, 1908. But it is contended that section 9 fixes the status of Indians as regards alienation after the death of allottee, and an oil and gas lease being a conveyance of an interest in real estate within the meaning of the act of May 27, 1908, said lease must be approved as required by section 9 of said act, and not otherwise. This court, in the case of Seiffert v. Jones, 77 Okla. 204, 186 Pac. 472, in the third paragraph of the syllabus stated as follows:

"As to the Five Civilized Tribes, section 1 of the act of May 27, 1908, fixes the status of allotments as regards restriction on alienation during the lifetime of the allottee, and section 9 fixes the status of allotted land as regards restrictions on alienation, after the death of the allottee; each refers to separate and distinct subject-matters, and neither is interdependent upon the other."

The court further stated:

"An examination of the different treaties and agreements discloses the fact that the restriction on alienation of allotments of living Indians has always been treated separately from the restriction on alienation of lands after the death of the allottee. This

distinction has been recognized in the following cases: McCosar v. Chapman, 59 Okla. 78, 157 Pac. 1059 (Creek Agreement); Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198 (Creek Agreement); Mullen v. U. S., 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834 (Choctaw-Chickasaw Agreement); Smith v. Sumpsey, 64 Okla. 186, 166 Pac. 1094 (Seminole Agreement); Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259 (Act of May 27, 1908.)"

In the case of Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259, this court stated:

"It will be noted that section 1 fixes the status of allotted lands as regards the restrictions on alienation during the lifetime of the allottee, and that section 9 fixes the status of allotted lands as regards restrictions after the death of the allottee."

Application for writ of certiorari in this case was denied by the Supreme Court of the United States (247 U. S. 506).

To the same effect are the following cases of this court: King v. Mitchell, 69 Okla. 207, 171 Pac. 725; Coleman v. Davis, 72 Oklahoma, 180 Pac. 381; King v. Shults, 72 Oklahoma, 180 Pac. 550; Stewart v. Burrows, 80 Okla. 23, 193 Pac. 881. This same principle of law was announced by the Supreme Court of the United States in the case of Harris v. Bell, 254 U. S. 103, 63 L. Ed. 594.

If section 1 of the act of May 27, 1908, fixes the status of alienation as regards restrictions on alienation during the lifetime of the allottee and section 9 fixes the status of allotted lands as regards restrictions after the death of the allottee, and both have been treated by Congress as separate and independent subject-matters and Congress has always dealt with them as separate and independent subject-matters, will the proviso of section 2 be construed to apply to the subject-matter in section 9? The general rule regarding the construction to be placed upon a proviso to a statute is stated in the case of Hudson v. Hopkins, 75 Okla. 260, 183 Pac. 507, as follows:

"The natural and proper office of a proviso is to restrain or qualify some preceding matter, and will ordinarily be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. Leader Printing Co. v. Territory, 6 Okla. 302, 50 Pac. 1001; Allen et al. v. Reed et al., 10 Okla. 105, 60 Pac. 782, 63 Pac. 867; Brewer et al. v. Rust, 20 Okla. 776, 95 Pac. 233. But, as said in Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755, this rule is not without its exceptions, for 'where it is plainly intended that such proviso shall limit, qualify, or define other sections or provisions of the act than that of which it

forms a part, the court should give it such meaning.' The proviso should be construed in connection with the section of which it forms a part, and, if the context requires, it may be considered tantamount to an independent enactment."

If we apply the rule that the proviso is to restrain or qualify some preceding matter and will ordinarily confine it to what precedes it, the proviso in section 2 would apply to restrictions on alienation during the lifetime of the allottee, unless it clearly appears to have been intended to apply to some other matter. This intent cannot be considered plain when the two subject-matters, to wit, restrictions on alienation during the lifetime of the allottee and the status of allotted lands on restrictions after the death of allottee, have always been considered and treated as separate and distinct subject-matters. We do not think the proviso can be so construed.

Can the proviso be construed tantamount to an independent enactment? There is nothing in the act of May 27, 1908, that would require this proviso to be treated as an independent enactment. In fact, when you consider section 9 as dealing with restrictions upon alienation after the death of the allottee, it would be to put a strained construction upon section 9 to say that Congress delegated to the county court having jurisdiction of the estate of the deceased allottee the right to approve the deeds or any conveyance of a full-blood heir, but did not give that federal agency the right to approve a conveyance which alienated less than the entire estate, to wit, an oil and gas lease.

It is contended the case of Parker v. Richards, supra, announces a principle of law contrary to that announced in the former decisions. The Parker v. Richards Case did not involve the question, either directly or indirectly, that is involved in the case at bar. In that case an oil and gas lease had been executed upon land restricted under section 1 of the act of May 27, 1908, and approved as provided in section 2 of the act, by the Secretary of Interior. The lease, conformably to the regulations of the Department of the Interior, provided that the Secretary of Interior, through its agent, should supervise operations under the lease, collect the royalties, and further provided, in the event the restrictions upon alienation should be removed, the supervision of the secretary should be relinquished at once and the royalties paid to the lessor or to the then owner of the land. Oil was produced under the lease during the lifetime of the lease, and

the royalties were collected by the Secretary of Interior. Upon the death of the allottee, Eastman Richards, a full-blood Creek Indian, was the sole and only heir. Suit was brought by the administrator of the estate of the deceased allottee against the superintendent and cashier of the Five Civilized Tribes to enjoin them from collecting future royalties and to compel the surrender of the royalties already collected. The court, in referring to the provision in section 9, said:

"In exact words, it puts full-blood Indian heirs in a distinct and excepted class and forbids any conveyance of any interest of such an heir in such land unless it be approved by the court named. In other words, as to that class of heirs the restrictions are not removed, but merely relaxed or qualified to the extent of sanctioning such conveyances as receive the court's approval. Conveyances without its approval fall within the ban of the restrictions."

This language appears to be plain—that all conveyances of full-blood Indian heirs must be approved by the county court; and if an oil and gas lease is a conveyance or alienation within the meaning of the act, must not this language be construed to hold that the county court is a federal agency of the government and is the only agency necessary to approve such conveyance?

The court in no place stated or intimated that the court considered the inherited lands of a full-blood Indian heir to be restricted land within the meaning of section 2 of the act of May 27, 1908; the court did say that the restrictions of section 1 were relaxed and qualified to the extent of sanctioning such conveyances as received the court's approval, and that no such sale had ever been made. The opinion holds: The land having been leased, as required by the act, and supervision of the lease being in the Secretary of Interior, this supervision did not terminate, as long as the land was restricted in the sense it would require the approval of the federal agency to approve a sale.

It is our opinion that there was no language in the case of Parker v. Richards that can be construed to overrule the former decisions of this court or the principles of law heretofore announced by the federal court or this court.

In the case of Rogers v. Rogers, 263 Fed. 160, decided since the decision of Parker v. Richards, the court adhered to the rule announced in the case of Chupco v. Chapman.

We therefore conclude that the oil and gas lease executed by Salina Land, a full-

blood Creek Indian, upon her inherited lands was valid when approved by the county court having the jurisdiction of the estate of the deceased allottee, and it was unnecessary to have approval of the Secretary of Interior. To hold otherwise would be to hold that a full-blood heir might sell or convey his entire estate in the land or the royalties upon the conveyance being approved by the county court, but would be unable to sell an interest less than the fee, to wit, such an interest as conveyed by an oil and gas lease.

It is next contended by the plaintiff in error that the allegations of the answer must be taken as true, and it was error for the court to sustain a motion for judgment on the pleadings, because the plaintiff did not come into a court of equity with clean hands. The answer and cross-petition are very lengthy, and allege facts which amount to fraud against J. H. Land and Salina Land. J. H. Land and Salina Land intervened in the action and asked to have the oil and gas lease executed to Miller canceled on account of fraud, but they dismissed their plea of intervention with prejudice. We are unable to construe the allegations of the cross-petition as stating a defense or any fraud committed by the defendants against the plaintiff in error. There was no fiduciary relation existing between the Pluto Oil Company and Miller or his associates. There is an allegation that one of Miller's associates promised an officer of the Pluto Oil Company that he would introduce one of the officers of the Pluto Oil Company to J. H. Land and Salina Land in order that they might obtain a lease. It is further alleged that said representative represented to the officers of the company that the Lands would not deal with the company without his advice. There is no allegation of any fiduciary relation existing between Miller or his associates and the company, or that the company employed said associate to secure the lease, or that said associate of Miller promised the company to procure a lease for them.

It is further alleged that Miller and associates represented to the Lands that they were procuring the lease for the Pluto Oil Company. This, of course, was a fraud upon the Lands, but the plaintiff does not allege that it had employed defendants to procure the lease for the company, nor that they procured the lease under facts or circumstances that would make defendants hold the lease as trustee, for the use and benefit of the company.

Can the plaintiff in error take advantage of the fraud alleged to have been committed in securing the oil and gas lease? If we understand the plaintiff in error's position, the lease obtained by it through the guardian must be considered void. In their answer they allege that after the execution of the lease from Land to Miller, the Lands executed a lease to the plaintiff in error which is now pending before the Secretary of Interior for approval. Their alleged interest in the land must depend upon its right acquired under the second lease from the Lands, which has not yet been approved. The Lands, by dismissing their plea of intervention with prejudice, have waived any fraud or right to have the lease executed to Miller set aside.

In the case of Graham v. Railroad Company, 102 U. S. 148, 26 L. Ed. 106, it is said:

"(2) Subsequent creditors have no better right than subsequent purchasers, to question a previous transaction, in which the debtor's property was obtained from him by fraud, in which he has acquiesced.

"(3) A subsequent purchaser from the grantor cannot set up the alleged fraud of the first grantee, to defeat his title."

It is contended that the principle of equity, to wit: "He who comes into equity must come with clean hands," and the principle, "He who has done inequity cannot have equity," are applicable. It must be remembered that this was a law action commenced by Miller against the Pluto Oil & Gas Company for possession of a lease, and for an accounting. The company's plea was that the plaintiff had obtained the lease from the owner of the land by fraud and misrepresentations. This court in the case of Canfield v. Jack, 78 Okla. 127, 188 Pac. 1040, stated:

"'Clean hands,' means a clean record with respect to the transaction with defendant, and not with respect to any third person."

In the case of First National Bank of Catonsville v. Carter, 103 Atl. 463, the court in the body of the opinion stated:

"As to the appellant's defense that the appellee did not come into court with clean hands, we are of the opinion it has no force, not only for the reason that from the allegations and testimony we are unable to see that any fraud was practiced upon the vendor of Mrs. Callow, but for the further reason that this defense would not be open to the appellant; for admittedly, there was no fraud practiced upon him, the appellant."

In the case of Galbraith v. Devlin (Wash.) 148 Pac. 589, the court stated:

"The right of plaintiff to relief against his copartners for misrepresentation and concealment in buying his interest is not

barred, under the doctrine of clean hands, because of any misrepresentation by him to the firm's attorney, in the settlement of the attorney's claim for services, not complained of by the attorney."

The cases upon this question are annotated in 4 A. L. R. 58 and 59. It is also contended this court held to the contrary in the case of Brockman v. Roberts, 89 Okla. 59, 213 Pac. 543. There is a statement in the opinion but not in the syllabus regarding who may take advantage of fraud. In that case, however, the court treated the deed as void and not voidable. That case relied upon the case of Bethany Hospital Co. v. Phillippi (Kan.) 107 Pac. 530, which case announced, in substance, the rule as follows: Where an insane person makes a deed to another who had knowledge of the incapacity of the grantor, and who gave no substantial consideration for the property, held, that the deed was a nullity and did not operate to revoke a will previously made to the grantor and the devisee in the will had such an interest to have said deed set aside. In the instant case the lease was not void nor a nullity, but could only be set aside by the grantor, he having elected, however, to waive the fraud if there was any and accept the benefits. The grantor having ratified his contract, the plaintiffs in error herein are not in a position to complain.

For the reasons stated, the judgment of the lower court is affirmed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, COCHRAN, HARRISON, and MASON, JJ., concur.