## UNITED STATES v. GYPSY OIL CO.

(Circuit Court of Appeals, Eighth Circuit. December 18, 1925.)

No. 6852.

**1. Indians ⬤15(1)—Restrictions on sales by original allottees held not applicable to inherited lands.**

Act May 27, 1908, §§ 1, 2, 6, restricting sale of lands allotted to Creek Indians, applies only to living allottees, and not to heirs of such allottees; rights of such persons being governed by section 9.

**2. Indians ⬤16(½)—Oil and gas lease by heir of deceased Creek Indian held "conveyance" requiring statutory approval.**

Oil and gas lease, executed by full-blood minor heir of deceased Creek Indian allottee on his inherited lands, is "conveyance" of an interest in said lands within Act May 27, 1908, § 9, requiring approval as therein provided.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conveyance.]

**3. Indians ⬤16(3)—Approval of oil and gas lease by guardian of minor full-blood Creek Indian held valid without approval of Secretary of the Interior.**

Under Act May 27, 1908, §§ 6, 9, approval by probate court of Oklahoma of oil and gas lease executed by guardian of full-blood Creek Indian, of lands inherited from original allottee, was sufficient, and approval by Secretary of the Interior was unnecessary.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit by the United States against the Gypsy Oil Company. Decree for defendant, and the United States appeals. Affirmed.

O. H. Graves, Asst. U. S. Atty., of Washington, D. C. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

James B. Diggs of Tulsa, Okl. (William C. Liedtke and Redmond S. Cole, both of Tulsa, Okl., on the brief), for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. This is a suit in equity brought by the United States (hereinafter called plaintiff) against the Gypsy Oil Company (hereinafter called defendant), to cancel an oil and gas lease. The trial court sustained defendant's motion to dismiss the amended bill, plaintiff elected not to plead further, a decree dismissing the bill was entered, and the plaintiff appealed therefrom

The material facts set up in the bill are: That Willie Clinton, a full-blood Creek Indian, duly enrolled, was allotted as a portion of his surplus lands, the N. W. ¼ of the N. W. ¼, Sec. 22, Tp. 15 N., R. 10 E., Creek county, Okl.; that thereafter Willie Clinton died intestate, leaving as his sole heir, his brother, Wilson Clinton, a full-blood Creek Indian, duly enrolled; that on November 26, 1912, Wilson Clinton was a minor, and on that date Jesse Allen, as the duly qualified and acting guardian of Wilson Clinton, theretofore duly appointed by the county court of Creek county, Okl., which had jurisdiction of the estate of Wilson Clinton, made, executed, and delivered to J. I. Gillespie a commercial oil and gas mining lease on the 40 acres of land above described and other lands, for the term of 5 years from said date, and as much longer as oil or gas should be found or produced in paying quantities thereon; that this lease was duly approved by the county court of Creek county, Okl., on November 26, 1912; that on January 28, 1913, Gillespie made, executed, and delivered to A. H. Russell an assignment of this lease; that on March 26, 1913, Russell made, executed, and delivered to the defendant an assignment of that portion of the lease covering the 40 acres of land above described; that, during the month of January, 1921, the defendant went upon said land and immediately began drilling for oil and gas, and since said date has been, and now is, producing therefrom large quantities of oil and gas; that the oil and gas lease above referred to, and the assignments thereof, were not approved by the Secretary of the Interior; that on the 16th day of October, 1920, Edmond Hill, as the duly appointed, qualified, and acting guardian of the estate of Wilson Clinton, an incompetent, offered for sale, and sold at public auction, and executed and delivered to J. H. Alexander and J. Truman Nixon, an oil and gas lease covering the 40 acres of land above described; and that the latter lease was approved by the county court of Creek county, Okl., and by the Secretary of the Interior.

The bill of complaint prayed for a cancellation of the lease to Gillespie and the subsequent assignments through which defendant claims title, and for damages.

The plaintiff contends that the approval of the Secretary of the Interior was an essential prerequisite to the validity of the lease from Allen, as guardian, to Gillespie. On the other hand, the defendant contends that the only approval necessary was that

given by the county court. To determine which of these two conflicting contentions is correct, resort must be had to the Act of May 27, 1908 (35 Stat. 312).

Section 1 provides:

"* * * All allotted lands of enrolled full bloods, * * * shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, one thousand nine hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. * * *"

Section 2 provides:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

Section 6 provides:

"That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

It further provides that the Secretary of the Interior, under rules and regulations prescribed by him, may appoint a local representative within the state of Oklahoma to inquire into and investigate the conduct of guardians having in charge the estates of such minors, and that it shall be the duty of such representative, whenever he shall be of opinion that the estate of any minor is not being properly cared for by the guardian, or is being dissipated or wasted or permitted to deteriorate in value by negligence, carelessness, or incompetency of the guardian, to report the matter to the proper probate court, to take steps to have the same investigated, and to prosecute any necessary remedy, either civil or criminal, or both, to preserve the property and protect the interests of such minor allottee. It also contains the following proviso:

"Provided, that no restricted lands of living minors shall be sold or incumbered, except by leases authorized by law, by order of the court or otherwise."

Section 9 of the act provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

The following decisions by the Supreme Court of Oklahoma support the contention of the defendant: Chupco et al. v. Chapman et al., 76 Okl. 201, 170 P. 259; Pluto Oil & Gas Co. et al. v. Miller, 95 Okl. 222, 219 P. 303; Gypsy Oil Co. v. Clinton et al., 98 Okl. 282, 220 P. 587. The last-mentioned case involved the same lease and the same question presented by this record.

We believe, however, the answer to the question here presented may be found in two decisions of the Supreme Court, namely, Parker v. Richard et al., 250 U. S. 235, 39 S. Ct. 442, 63 L. Ed. 954, and Harris et al. v. Bell et al., 254 U. S. 103, 41 S. Ct. 49, 65 L. Ed. 159, both written by Mr. Justice Van Devanter, the former decided June 2, 1919, and the latter November 15, 1920.

Parker v. Richard, supra, upon which counsel for plaintiff largely bottom their contentions, was a suit to enjoin the Superintendent and Cashier of the Five Civilized Tribes, from collecting future royalties on an oil and gas lease of land allotted to a Creek Indian, and to compel them to surrender royalties already collected. The land was part of the Creek Tribal lands, and was allotted under the Acts of March 1, 1901 (31 Stat. 861), and June 30, 1902 (32 Stat. 500). The allottee was a minor and an enrolled Indian of the full blood. In 1912, while he was yet a minor, the oil and gas lease was given by his guardian. It was approved by the court having jurisdiction of his estate, and by the Secretary of the Interior. The allottee died in 1916 while still a minor, and left his father, a full-blood Creek Indian, as his only heir. The plain-

tiffs in the action were the administrators of the estate of the deceased allottee. The lease provided, conformable to the regulations, that the Secretary of the Interior through his representatives should supervise all operations under the lease, that the royalties thereunder should be paid to his representatives, and that, in the event restrictions on alienation should be removed, the supervision of the Secretary of the Interior over the lease should be relinquished at once, and all further royalties thereunder should be paid to the lessor or the then owner of the lands. It was the contention of the plaintiffs that under the provisions of section 9 of the Act of May 27, 1908, the death of the allottee operated to remove all restrictions upon the alienation of the land, and that therefore, under the provisions of the lease and the regulations, the Secretary of the Interior was required to relinquish supervision over the lease, and that the royalties were payable to them as the representatives of the then owner of the land.

Upon this contention the court in part said:

"By the Act of 1908, which imposed the restrictions on alienation and contained the leasing provision, Congress further declared, in section 9, 'that the death of any allottee * * * shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.' In the absence of the proviso, it would be very plain that on the death of the allottee all restrictions on the alienation of the land allotted to him were removed. But the proviso is there, and cannot be disregarded. It obviously limits and restrains what precedes it. In exact words it puts full-blood Indian heirs in a distinct and excepted class, and forbids any conveyance of any interest of such an heir in such land unless it be approved by the court named. In other words, as to that class of heirs the restrictions are not removed, but merely relaxed or qualified to the extent of sanctioning such conveyances as receive the court's approval. Conveyances without its approval fall within the ban of the restrictions. That the agency which is to approve or not is a state court is not material. It is the agency selected by Congress, and the authority confided to it is to be exercised in giving effect to the will of Congress in respect of a matter within its control. Thus in a practical sense the court, in exercising that authority acts as a federal agency; and this is recognized by the Supreme Court of the state. Marcy v. Board of Commissioners, 45 Okl. 1 [144 P. 611]. Plainly, the restrictions have the same force and operate in the same way as if Congress had selected another agency, exclusively federal, such as the Superintendent of the Five Civilized Tribes. * * * We conclude that the land covered by the lease is still restricted land. * * * Under the Act of 1908, as already shown, leases of 'restricted lands' for oil and gas mining may be made with the approval of the Secretary of the Interior, under regulations prescribed by him, 'and not otherwise.' The present lease was made and approved under that provision. The land was then restricted, and the restrictions have not since been removed. Thus the event which the regulations and the lease declare shall terminate the supervision by the Secretary of the Interior of the collection, care, and disbursement of the royalties has not occurred. Nor has the occasion for some supervision disappeared. The heir is a full-blood Indian, as was the allottee, and is regarded by the act as in need of protection, as was the allottee. In the absence of some provision to the contrary, the supervision naturally falls to the Secretary of the Interior. Rev. Stat. §§ 441, 463 [Comp. St. §§ 681, 716]; West v. Hitchcock, 205 U. S. 80, 85 [27 S. Ct. 423, 51 L. Ed. 718]. And see Catholic Bishop of Nesqually v. Gibbon, 158 U. S. 155, 166 [15 S. Ct. 779, 39 L. Ed. 931]. There is nothing to the contrary in the leasing provision or in any other of which we are aware. True, it is possible under the proviso in section 9 for the heir, if the court approves, to sell and convey his interest in the land. But that has not been done, and it well may be that the heir will remain the owner until the restrictions expire in regular course—April 26, 1931."

This case holds: That, upon the death of an allottee and the passing of his allotted lands to a full-blood Indian, the lands do not cease to be restricted, but the restrictions are relaxed and qualified to the extent that such heir may convey the same with the approval of the proper probate court; and, since the agency designated by Congress to approve a conveyance of the land by the full-blood Indian heir, and to supervise and safeguard his interests in such event, cannot assume such supervision and control until the heir by affirmative act undertakes to convey, that the duty of the Secretary of the Interior to ex-

ercise supervision over a lease made during the lifetime of the allottee, and the royalties from such a lease, continues until such a conveyance is made. It does not hold that inherited lands of a full-blood Indian heir are restricted lands within the meaning of sections 1 and 2 of the act, or that the approval of the Secretary of the Interior is essential to a valid oil and gas lease of such lands by the full-blood Indian heir.

In Harris v. Bell, supra, the lands in question were allotted in the name and right of Freeland Francis, a Creek child who was born in 1903, lawfully enrolled June 10, 1905, and died 12 days later. In due course patent for the allotment was issued in his name. His heirs, to whom the title passed, were his mother, his half brother, and his brother, Amos, and his sister, Elizabeth. The mother, Amos, and Elizabeth were full-blood Creek Indians, duly enrolled as such. On January 15, 1908, the mother, who was an adult, sold and conveyed her interest, and that conveyance was approved by the Secretary of the Interior July 6, 1910. On January 15, 1912, the interest of Amos and Elizabeth, who were minors, was sold and conveyed by their guardian under the direction and approving order of the county court, wherein the guardianship of their persons and property was pending. The action was brought to cancel these conveyances.

Under the provisions of section 22 of the Act of April 26, 1906 (34 Stat. 137), the mother being an adult full-blood Indian, was authorized to convey her interest with the approval of the Secretary of the Interior. It was urged, however, that, before the Secretary had given his approval to the conveyance, all of the power to approve had been taken from him and lodged elsewhere by the Act of May 27, 1908. In passing on this contention, the court said:

"The provision in section 9, that no conveyance of any interest of any full-blood Indian heir shall be valid 'unless approved by the court having jurisdiction of the settlement of the estate' of the deceased allottee, taken according to its natural import, prescribes a rule for future rather than prior conveyances; and no reason is perceived for rejecting its natural import. Had there been a purpose to cut off action by the Secretary as to conveyances already made, some of which were before him at the time, it is but reasonable to believe that other words aptly expressing that purpose would have been used."

It was contended that the conveyance by the guardian was invalid for two reasons:

First, that it was in violation of the proviso in section 6; and, second, that it was not approved by the court having jurisdiction of the settlement of the estate of Freeland Francis, the deceased allottee.

Upon these contentions the court in part said:

"Section 6 of the Act of 1908 subjects the persons and property of minor allottees to the jurisdiction of the probate courts of the state, and in a proviso says, 'No restricted lands of living minors shall be sold or incumbered, except by leases authorized by law, by order of the court or otherwise.' One ground on which the guardian's sale on behalf of the minor heirs, Amos and Elizabeth, is assailed, is that it was in violation of this proviso. But in our opinion the proviso does not include or affect inherited lands. It refers, as a survey of the act shows, to lands of living minor allottees and not to lands inherited from deceased allottees. Section 9 expressly recognizes that the latter may be sold, and this proviso cannot be taken as prescribing the contrary. The word 'living' evidently is intended to mark the distinction. What is intended is to make sure that minor allottees receive the benefit of the restrictions prescribed in section 1, and not to impose others. Apparently it was apprehended that the general language of section 6 might be taken as enabling probate courts and guardians to sell without regard to those restrictions, and the office of the proviso is to prevent this. So understood, it is in accord with the general scheme of the act and not in conflict with any other provision. * * *

"If in this instance the same court had had jurisdiction of the guardianship of the minor heirs and of the settlement of the estate of the deceased allottee, no embarrassment would have ensued; but, as that was not the case, the question arises, whether it was essential that the guardian's conveyance, directed and approved, as it was, by the court having control of the guardianship, should also be approved by the court having jurisdiction of the settlement of the deceased allottee's estate? * * *

"Of course, the purpose in requiring any approval is to safeguard the interests of the full-blood Indian heir. Where he is a minor, he can convey only through a guardian, and no court is in a better situation to appreciate and safeguard his interests than the one wherein the guardianship is pending. Besides, as a general rule, a guardianship carries with it exclusive power to direct the guardian and to supervise the management

and disposal of the ward's property. It is so in Oklahoma. This rule is so widely recognized and so well grounded in reason that a purpose to depart from it ought not to be assumed unless manifested by some very clear or explicit provision. The act of 1908 contains no manifestation of such a purpose outside the proviso in section 9. That proviso seems broad, but so is the provision in section 6 subjecting the persons and property of minor Indians to local guardianship. As both are in the same act, they evidently were intended to operate harmoniously and should be construed accordingly. The proviso does not mention minors under guardianship; and to regard its general words as including them will either take all supervision of the sale of their interest in inherited lands from the court in which the guardianship is pending, or subject that court's action to the approval of another court of the same rank. In either event, conflict and confusion will almost certainly ensue and be detrimental to the minor heirs. But, if the proviso be regarded, as well it may, as referring to heirs not under guardianship—in other words, to adult heirs—the two provisions will operate in entire harmony and all full-blood heirs will receive the measure of protection intended. We think this is the true construction."

This case holds that the proviso in section 6 applies only to lands of living minor allottees, and not to inherited lands, and that, under section 9 of the act, lands inherited from allottees may be sold, but, in case of a minor heir, only through a guardian, with the proper approval of the probate court having jurisdiction of the guardianship, and, in case of an adult full-blood heir, only with the approval of the probate court having jurisdiction of the settlement of the estate of the deceased allottee from whom the land was inherited.

[1] A consideration of this act, in the light of the foregoing decisions, leads us to the conclusion, that Congress purposed thereby, in the first place, by certain restrictions, to protect the lands of living allottees, and, in the second place, by other and different restrictions, to protect inherited lands of full-blood adult heirs and minor heirs; and that Congress intended, upon the passing of the lands by inheritance to the heirs of an allottee, that the latter restrictions should not attach in addition to, but in place of, the former restrictions.

It is manifest that Congress looked upon the allotted lands in the hands of the original full-blood allottee in need of the greatest measure of protection. It restricted such lands from alienation, except with the consent of the Secretary of the Interior until 1931, and it provided that oil and gas leases on such lands could only be made with the consent of the Secretary of the Interior. On the other hand, it removed all restrictions on the sale of such lands in the hands of the heir of such allottee, except that it provided certain modified and limited restrictions as to minors and full-blood adults, clearly recognizing that as to such lands less restrictions on alienation were required. Now, if the contention of counsel for the plaintiff be sound, the class of lands needing the greatest protection may be leased for oil and gas with the consent of the Secretary of the Interior only, but to so lease the less important lands both the consent of the Secretary of the Interior and the approval of the probate court are required.

[2] Counsel for the plaintiff contend, however, that an oil and gas lease is not a conveyance within the meaning of section 9. If counsel are correct in their contention, then the full-blood Indian heir can dispose of his entire fee in inherited lands with the approval of the proper probate court, but, if he wishes to dispose of a lesser interest by oil and gas lease, he must obtain the approval of the Secretary of the Interior. We do not believe Congress so intended. The language used, "conveyance of any interest * * * in such land," in its usual sense, would include an oil and gas lease, and we find nothing in the act indicating an intent to restrict the meaning thereof. Waskey v. Chambers, 224 U. S. 564, 32 S. Ct. 597, 56 L. Ed. 885, Ann. Cas. 1913D, 998; Sanford v. Johnson, 24 Minn. 172; Hoyt et al. v. Fixico, 71 Okl. 103, 175 P. 517; Pluto Oil & Gas Co. et al. v. Miller, 95 Okl. 222, 219 P. 303; Gypsy Oil Co. v. Clinton et al., 98 Okl. 282, 220 P. 587.

[3] Counsel for the plaintiff say that the full-blood Indian heir is no more competent to deal with the lands and rents and royalties therefrom than was the allottee from whom he inherited, and equally requires guardianship and protection. This may be admitted, but the provisions of the act provide this guardianship and protection. If the heir be a minor, we find that section 6 expressly subjects the persons and property of Indian minors of the Five Civilized Tribes to the jurisdiction of the probate courts of Oklahoma and makes explicit provision for the representative of the Secretary of the Interior to inquire into and investigate the conduct of guardians of Indian minors, and in

case the estate of any Indian minor is not being properly managed and cared for by the guardian, to take proper steps to protect such estate. If the Indian heir be an adult, then the proviso of section 9 provides that a conveyance shall not be valid unless approved by the court having jurisdiction of the settlement of the estate of the deceased allottee. This gives full authority to the probate court acting as a federal agency to permit a sale and conveyance only when for the benefit of the Indian heir, and under such terms and conditions as will fully protect his interests. In both instances, the probate courts, which in Oklahoma are the county courts, as federal agencies, are adopted and designated by Congress as the instrumentality through which protection shall be afforded to the Indian heir.

It is therefore our conclusion: That, when the lands in question passed by inheritance from Willie Clinton to Wilson Clinton, such lands were freed from all restrictions upon alienation, except that Wilson Clinton could only convey the same with the approval of the proper probate court, which, so long as he remained a minor under guardianship, was the court having jurisdiction of the guardianship; that the right to convey the whole included the right to convey the lesser interest by oil and gas lease; that the lease under which defendant claims was duly approved by the proper agency designated by the act of 1908; and that the approval of the Secretary of the Interior was not essential to its validity.

The decree appealed from is therefore affirmed.