## SHOWALTER v. HAMPTON.

No. 14407—Opinion Filed Nov. 27, 1923.

Rehearing Denied Feb. 19, 1924.

(Syllabus.)

1. **Guardian and Ward — Profits from Estate by Guardian — Accounting — Necessity.**

Profit or advantage arising from the management of the ward's estate must be accounted for by the guardian. A guardian cannot retain the benefit which he received in making a contract affecting his ward's property, but will be held to an accounting by the court having jurisdiction of the ward's estate.

2. **Same — Indians — Guardianship — Mining Lease Bonus — Accounting.**

Where a Quapaw Indian, who was competent under the rules and regulations of the Interior Department to transact her own business, was appointed legal guardian by the probate court for her minor sister and executed a mining lease individually for her ward upon inherited lands in which such guardian and her ward had the same interest, under the direction of the Secretary of the Interior and an order of the probate court, and such guardian required the lessee to execute a contract obligating the lessee to pay her $40,000 when said lease was approved by the Secretary of the Interior, held, such guardian must account to such ward for one-half of the $40,000 received pursuant to such contract.

Error from District Court, Ottawa County: S. C. Fullerton, Judge.

In re guardianship of Georgia Valliere Hampton; Clara Showalter, guardian. Guardian files final account and ward files exceptions. County court sustains ward's exceptions and guardian appeals to district court. District court in trial de novo affirms order of county court. Guardian brings error. Affirmed.

Marshall W. Hinch and Edward E. Sapp, for plaintiff in error.

F. D. Adams and E. C. Fitzgerald, for defendant in error.

KENNAMER, J. Clara Showalter was appointed guardian of Georgia Valliere, now Hampton, by the probate court of Ottawa county, Okla., in the year 1915. Said guardian and her ward are members of the Quapaw Tribe of Indians. Clara Showalter, on the date of her appointment as guardian, was an unrestricted Indian, having been declared competent to attend to her business affairs by the Secretary of the Interior. Georgia Valliere, for whom she was appointed guardian, was an incompetent Indian and restricted. It appears that on the date of the appointment of Clara Showalter as guardian of Georgia Valliere, her minor sister, each owned an undivided one-sixth interest in the allotment of Mary Calf, deceased, Quapaw allottee, and each an undivided one-twelfth interest in the allotment of Thomas Buffalo, deceased, Quapaw allottee.

Prior to the appointment of Clara Showalter as guardian of her sister, a mining lease contract upon their interest in the two allotments had been executed by one

H. W. Woodard, acting as guardian for Clara Showalter while she was a minor and Georgia Valliere. The record further shows that in the year 1917 Clara Showalter, for herself and as guardian of Georgia Valliere, pursuant to an order of the county court, executed a mining lease on their interest in the Mary J. Calf allotment to the Welch Mining Company and she also executed the lease on behalf of other brothers and sisters as guardian, now not involved in this case. Prior to the execution of this lease the Secretary of the Interior, under the provision of the act of Congress approved June 7, 1897, (30 U. S. Stats. at L. 72), had withdrawn from Georgia Valliere the right to lease her interest for mining purposes and a lease affecting her interest in the inherited lands must be made under the direction and approval of the Secretary of the Interior according to the rules and regulations promulgated by him on April 7, 1917.

All the leases affecting the interest of the guardian and her ward in the allotments were transferred to L. S. Skelton and Skelton Lead & Zinc Company under the approval of the county court, and the leases were submitted to the Secretary of Interior by said company for approval. Upon a hearing the Secretary adjudged and decreed the leases to be void; whereupon the Skelton Lead & Zinc Company applied to the Secretary of the Interior for a new and approved lease upon the interest of the guardian and her ward and other heirs interested in the allotments. The Secretary of the Interior prepared new leases and forwarded them to the Superintendent of the Quapaw Indian Agency at Miami to be executed by all the interested heirs, and when the Superintendent of the Quapaw Agency received said leases he sent out notices or letters to all the heirs to come to his office on the 9th day of July, 1920, for the purpose of executing the leases. Clara Showalter received one of these letters directing her to come and sign the leases individually and to obtain an order from the county court of Ottawa county authorizing her to sign as guardian for her ward, Georgia Valliere. There is no conflict in the evidence to the effect that Clara Showalter, after receiving this notice, called at Superintendent's office on the 9th day of July and refused to sign the leases either in her individual capacity or as guardian and refused to take any steps to obtain an order from the county court of Ottawa county authorizing her as guardian to sign these leases at that time.

On the 21st day of July, 1920, Clara Showalter entered into a contract with the Skelton Lead & Zinc Company through Doctor Skelton, whereby said company agreed to pay her the sum of $40,000 after she had executed the leases and the same had been approved by the Secretary of the Interior. On the next day, after she had executed this contract, she, as guardian, appeared in the county court of Ottawa county, filed a petition, and obtained an order of said court authorizing her to execute the leases as guardian, and, after obtaining said order, on the same date she appeared at the office of the superintendent and executed the leases to L. S. Skelton individually and as guardian for her ward, Georgia Valliere. When she filed her final report in the county court, on the 15th day of July, 1921, as guardian of Georgia Valliere, now Hampton, she reported she had on hand due her ward the sum of $11,-343.33, consisting of United States Liberty Bonds and cash in the bank, but nowhere in her report did she charge herself with any part of the $40,000 received in the settlement made with Doctor Skelton and demanded by her before she executed the leases for herself and as guardian of her ward on the 22nd day of July, 1920.

Georgia Valliere Hampton filed exceptions to the report in which she asks that Clara Showalter, her guardian, be charged with $15,000, which represents one-half of the $40,000 collected by Clara Showalter in the settlement made with Dr. Skelton at the time of the signing of the leases less $10,000 paid by her for the services of attorneys representing her in the settlement. The county court sustained the contention of Georgia Valliere Hampton and surcharged the guardian with the $15,000. Clara Showalter appealed from the order of the county court settling her accounts as guardian to the district court, and the case was tried de novo in said court and judgment entered on the 3rd day of January, 1923, affirming the judgment of the county court.

Clara Showalter filed motion for new trial, which was by the court overruled, and this appeal is prosecuted to reverse the judgment of the district court.

It is contended by counsel for Clara Showalter that on the 21st day of July, 1920, when Clara Showalter entered into the contract with the Skelton Lead & Zinc Company for the payment of $40,000 to her, the leases having been sent to the Superintendent of the Quapaw Indian Agency for execution, the only consideration for the payment of this money was the settlement of a controversy between the Skelton Lead & Zinc Company and Clara Showalter individually, wherein Clara Showalter

was to receive the money in full satisfaction of any claim she might have against the Skelton Lead & Zinc Company for damages in mining for zinc upon her interest in the allotments of Mary J. Calf and Thomas Buffalo under void leases, and that no part of the money was paid to Clara Showalter for her ward, Georgia Valliere Hampton, and that the matter of leasing the interest of Georgia Valliere Hampton in the lands was wholly within the power and jurisdiction of the Secretary of the Interior under the following provision of the act of June 7, 1897:

"That the allottees of land within the limits of the Quapaw Agency, Indian Territory, are hereby authorized to lease their lands or any part thereof for a term not exceeding three years for farming or grazing purposes, or ten years for mining or business purposes, and said allottees and their lessees and tenants shall have the right to employ such assistants, laborers, and help from time to time as they may deem necessary; provided, that whenever it shall be made to appear to the Secretary of the Interior that by reason of age or disability any such allottee cannot improve or manage his allotment properly and with benefit to himself, the same may be leased in the discretion of thet Secretary upon such terms and conditions as shall be prescribed by him." (30 U. S. Stats. at Large, 72.)

It is argued, by reason of the provisions of the statute, supra, it was unnecessary for the county court to make an order authorizing the guardian to execute said lease on behalf of Georgia Valliere Hampton or for the guardian to sign said leases, as the Secretary of the Interior was authorized to sign the lease for said ward or direct any person he deemed proper to do so as a federal agency. The following cases are cited to the effect that the county courts of this state in approving conveyances of full-blood Indian heirs do not exercise any probate jurisdiction conferred upon them by the Constitution and laws of the state, but only act as federal agencies. Malone v. Wamsley, 80 Okla. 181, 195 Pac. 484; Oklahoma Oil Company v. Bartlett, 236 Fed. 488; Tiger v. Creek County Court, 45 Okla. 701, 146 Pac. 912; Hope v. Foley, 57 Okla. 516, 157 Pac. 727; Barnett v. Kunkel, 259 Fed. 399.

Counsel by invoking the rule announced in these cases make the contention that by reason thereof Clara Showalter did not occupy any relation of trust towards her ward, Georgia Valliere Hampton, in executing and signing the leases under the direction of the Secretary of the Interior. With this contention we cannot agree. Section 8 of the rules of the Secretary provid-

ed for such leases to be signed and executed on behalf of minors having a guardian under the authority and order of the county court having appointed such guardian. Furthermore, whether it was necessary, under the federal act of June 7, 1897, supra, that such leases be executed by the guardian we deem it unnecessary to decide in this case, for the reason the undisputed testimony was to the effect that Clara Showalter refused to sign the leases either as an individual or as guardian until the contract was executed by which the Skelton Lead & Zinc Company was obligated to pay her $40,000, whether she was acting for her sister, Georgia Valliere Hampton, as a legal guardian, or as a federal agency, she used her position of trust in obtaining this money.

Furthermore, the evidence wholly fails to support her contention that she had any claim whatsoever against the Skelton Lead & Zinc Company for damages. But the only reasonable inference we are able to draw from the testimony is that she demanded of Dr. Skelton, representing the Skelton Lead & Zinc Company, this money for assisting him in securing a valid lease upon the land inherited by her and her minor brothers and sisters. We find a letter in the record dated April 13, 1921, by Mr. Carl F. Mayer, Superintendent of the Quapaw Indian Agency at Miami, Okla., to the Commissioner of Indian Affairs, in which he detailed the contention made by Clara Showalter on the date he delivered to her the $9,000 draft, which had been deposited with him as part payment of the $40,000, which Clara Showalter was to receive for executing the leases, and according to the statements made by Clara Showalter at this time said $40,000 was a payment made to her pursuant to agreement made over a year prior to the execution of the contract on the 21st day of July, 1920, and which was changed from time to time, and the $40,000 was for services rendered by her in assisting Dr. Skelton in securing valid leases upon the lands inherited by said heirs, including her ward. We deem it sufficient to state here, whatever the consideration was for the payment of the $40,000, Clara Showalter used the position of trust that she occupied towards her sister to her advantage, for the reason that she positively refused to sign the leases as guardian until the settlement was made by which the $40,000 was agreed to be paid. The law is well settled that whatever profit or advantage arises from the guardian's management of the ward's estate accrues to the ward and not to the guardian. Woerner's Guardianship, 173, 196; 12 R. C. L. 1169.

The rule is stated in Pomeroy's Equity Jurisprudence (2nd Ed.) sec. 1077, as follows:

"The duty not to accept any position or enter into any relation or do any act inconsistent with the interests of the beneficiary. This rule has a wide application and extends to every variety of circumstances. It rests upon the principle that as long as the confidential relation lasts, the trustees or other fiduciary owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to the best interests of his original cestui que trust. The rule applies alike to agents, partners, guardians, executors and administrators, directors, and managing officers of corporations, as well as to technical trustees. The most important phase of this rule is that which forbids trustees and other fiduciaries from dealing in their own behalf with respect to matters involved in the trust, and this prohibition operates irrespectively of the good faith or bad faith of such dealing."

It is our conclusion that Clara Showalter, having acted as guardian in signing and executing the leases and obtaining the money in controversy, and it being admitted that her ward had the same interest in the leased lands as her guardian, and if any damages had been sustained by reason of the operations of the Skelton Lead & Zinc Company under a void lease, that said minor sustained damages equally with her guardian, the ward is entitled to her share of the money. The conclusion is inevitable that whether Clara Showalter acted as a guardian or as a federal agency in the transactions, it was her imperative duty to be just as diligent in collecting damages for her sister as for herself. In equity and good conscience no other just judgment could have been rendered than the one entered by the trial court. Having reached this conclusion from an examination of the testimony, and basing the same upon the facts that we believe stand established and about which there is no serious controversy, if any error was committed by the trial court in refusing to disqualify, the same at least was harmless. Some contention is made by counsel that the cause upon a petition filed in the county court should have been transferred to the federal district court for the Eastern district of Oklahoma. The county court overruled the application and a transcript of the proceedings was filed in the United States district court, and upon a motion to remand the cause was remanded by order of the federal district court.

After the trial of the cause in the county court and it was appealed to the district court, no further application was made, and our attention has not been called to any authorities supporting the contention of Clara Showalter that the cause was properly transferrable to the federal court.

In view of the conclusions here reached, the judgment is affirmed.

McNEILL, NICHOLSON, BRANSON. and HARRISON, JJ., concur. JOHNSON, C. J., dissents.