## SHOWALTER v. HAMPTON.

Circuit Court of Appeals, Eighth Circuit.
May 25, 1928.

No. 8003.

1. Courts ⊜1—"Jurisdiction" is power to hear and determine controversy.

"Jurisdiction" of court is the power to hear and determine controversy between parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Jurisdiction (of Courts).]

2. Guardian and ward ⊜144—Oklahoma county court had jurisdiction to determine guardian's liability for money received on account of renting land of incompetent Indian ward (Comp. St. Okl. 1921, §§ 1079, 1085).

Under Comp. St. Okl. 1921, § 1079, empowering county court to appoint and remove guardians and to control conduct and settle their accounts, and section 1085, to effect that all legal presumptions attending orders of court of general jurisdiction shall attach to proceedings of such court, county court of such state had jurisdiction to determine liability of guardian for incompetent Indian ward for amount claimed to have been received on account of renting of land belonging to ward.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Action by Clara Showalter against Georgia Valliere Hampton. Judgment of dismissal, and plaintiff appeals. Affirmed.

Daniel H. Cecil, of Kansas City, Mo. (Halbert H. McCluer, of Kansas City, Mo., on the brief), for appellant.

E. C. Fitzgerald, of Miami, Okl.. (F. D. Adams, of Miami, Okl., on the brief), for appellee.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

DAVIS, District Judge. Clara Showalter, appellant, a citizen of the state of Missouri, filed, in the United States District Court for the Northern District of Oklahoma, an action in equity seeking an injunction against Georgia Valliere Hampton, appellee, a citizen of the state of Oklahoma. A motion to dismiss the bill on the ground that it failed to allege facts sufficient to constitute a cause of action was sustained by the court. The case is here on appeal from this ruling.

I. The bill filed in this case is lengthy, and it is not conceived to be necessary that it be set out in full. The substance of the bill only will be stated. The appellant and the appellee were sisters and were members of the Quapaw Tribe of Indians located in Ottawa county, Oklahoma. These parties inherited, and held as tenants in common, an interest in a certain tract of land located in Ottawa county, Oklahoma. This land was an allotment made to an ancestor of these parties, and was restricted against alienation for a period which has not expired.

The appellant, on September 2, 1915, was, by the county court of Ottawa county, Oklahoma, appointed and qualified as guardian of the appellee, who was then a minor. The Secretary of the Interior, by an order made on May 24, 1916, declared the appellee to be an incompetent Indian, and directed that her affairs be managed under the direction of the acting Indian agent for the Quapaw agency. The parties to this action, together with other heirs interested with them in the land above mentioned, had, on October 26, 1915, executed a mineral lease on the said land. The appellant acted for herself and in behalf of her ward in this transaction. This lease was not presented to or approved by the Secretary of the Interior. In 1920, acting in accordance with the statute, and the rules and regulations adopted by the department, the Secretary of the Interior directed that this lease be submitted for review. A hearing was had before the department, and it was determined that the lease was void, because executed by the guardian of incompetent Indians without the authority of the Secretary of the Interior. Thereupon, in July, 1920, the department directed that a new lease to the Skelton Lead & Zinc Company, on the same lands, be prepared by the department. This lease was drafted. The appellant was directed, by the department, to request the authority of the county court of Ottawa county to execute this instrument in behalf of her ward. This authority was sought by appellant and granted by the court. Thereupon the parties interested, including the appellant, individually and as guardian, joined in the execution of the lease.

The bill further alleges that, after the department declared appellee to be an incompetent Indian, the government took over the management and control of the appellee's interest in said lands, and that appellant made no contract in relation thereto and exercised no control thereover, except when directed so to do by the department. At the time of the execution of the lease, authorized by the Secretary of the Interior, the appellant was paid by the lessee therein the sum of $40,000, $10,000 of which went to her attorney. This sum, it is alleged, was paid to appellant individually and as damages on account of the holder of the original lease

having unlawfully operated under a void instrument.

The ward having reached her majority, the appellant, on April 14, 1921, filed her final report as guardian in the county court of Ottawa county. This report covered all of appellant's acts as guardian. Exceptions, and thereafter amended exceptions, were filed to the guardian's report. The court upon consideration of the matters thus presented confirmed the report in all respects, except as to one item, and as to this it sustained the exception.

The exception sustained was a claim that the ward was entitled to one-half of the amount paid to the appellant by the Skelton Company at the time of the execution of the lease. The county court thereupon surcharged the account of the guardian with the sum of $15,000. The case was taken on appeal to the district court of Ottawa county, which court, in a trial de novo, in effect affirmed the action of the county court. An appeal was taken to the Supreme Court of Oklahoma, and on November 27, 1923, the said court affirmed the decision of the district court of Ottawa county. Thereafter the case was, on writ of error, taken to the Supreme Court of the United States, where the writ was dismissed.

The foregoing statement is a synopsis of the facts alleged in the appellant's bill of complaint.

II. The Supreme Court of Oklahoma (Showalter v. Hampton, 101 Okl. 83, 223 P. 167) found that when, on the 9th of July, 1920, the appellant was requested by the Interior Department to obtain the authority of the county court, and to sign the lease on behalf of her ward and in her individual capacity, she refused to do so, but on the 21st day of July, 1920, she entered into a contract with the lessee, the Skelton Lead & Zinc Company, whereby the said company agreed to pay her $40,000 after the execution of the lease, and, upon approval, by the Secretary of the Interior. That the next day after the execution of this contract the appellant appeared in the county court, filed a petition, and obtained an order of the court authorizing her to execute the lease as guardian, and on the same day did sign the lease as guardian and individually. The court further found that the ward had the same interest in the leased land as the guardian, and that the damages sustained by reason of the operation of the property under a void lease accrued not to one, but to both, of these parties; that the appellant used her position as guardian of her minor sister for the purpose of obtaining the above sum of money, and that she refused to perform her duties as guardian until the contract for this payment was executed.

From the judgment of the Supreme Court of Oklahoma, the appellant sought and obtained a writ of error to the Supreme Court of the United States. The writ of error was dismissed for want of jurisdiction. Showalter v. Hampton, 269 U. S. 533, 46 S. Ct. 100, 70 L. Ed. 398.

III. The appellant contends that the county court of Ottawa county had no jurisdiction to hear and determine the question of the guardian's liability for any amount charged to have been received by her on account of the renting of the land belonging to her ward; that the exclusive jurisdiction to so determine was vested in the Secretary of the Interior.

IV. The county courts in the state of Oklahoma exercise probate jurisdiction. Section 1079, Comp. Oklahoma Stat. 1921, provides that the county court shall have power: "To appoint and remove guardians for infants, and for persons insane or otherwise incompetent; to compel payment and delivery by them of money or property belonging to their wards; to control their conduct and settle their accounts." Section 1085, Comp. Oklahoma Statutes 1921, provides that, in the exercise of the authority thus conferred, to the proceedings of the court shall be attached all legal presumptions that attend the orders of a court of general jurisdiction. The statute reads as follows: "The proceedings of this court are construed in the same manner, and with like intendments, as the proceedings of courts of general jurisdiction, and to its records, orders, judgments and decrees, there are accorded like force, effect and legal presumption as to the records, orders, judgments and decrees of district courts."

The effect of this statute has frequently been before the Supreme Court of that state, and it has uniformly held that the county courts are courts of record, and have original, general jurisdiction in probate matters; that the orders and judgments of said courts are entitled to the same favorable presumption and the same immunity from collateral attack as are accorded those of other courts of general jurisdiction. Welch v. Focht, 67 Okl. 275, 171 P. 730, L. R. A. 1918D, 1163; Vinson v. Cook, 76 Okl. 46, 184 P. 97; Moffer v. Jones, 67 Okl. 171, 169 P. 652.

V. It is the statutory law of the state of Oklahoma that the county court has authority to require a guardian to account for all funds of the ward's estate. The ward's es-

tate includes, according to the decisions of the state, all funds that have been received by the guardian in a representative capacity on behalf of his charge. If a guardian has so received and accepted property, he cannot, on accounting, assert that it was not properly in his custody. Showalter v. Hampton, 101 Okl. 83, 223 P. 167.

In the case of U. S. Fidelity & Guaranty Co. v. Hansen, 36 Okl. 459, 129 P. 67, a guardian received funds on behalf of his ward from the Secretary of the Interior, derived from the sale of restricted Indian land. The surety of the guardian's bond upon the accounting, raised the question as to its liability because the funds should have been kept by the Secretary of the Interior and that the guardian had no authority to receive them. But the court in effect held that the guardian, having received the fund, was obligated to account for the sum to the ward.

In Anderson v. Anderson, 45 Okl. 653, 146 P. 709, it was determined by the same court that a guardian who has received property in trust for his ward and executes a bond for its forthcoming when ordered will not be heard to say that the court had no jurisdiction over the property and to repudiate the trust and set up title thereto in himself.

In the case of Ellington v. State, 7 Okl. Cr. 252, 123 P. 186, the court said: "Where a guardian is charged with embezzlement of the trust funds of his ward, he cannot be heard to say that such funds were unlawfully acquired by him as such guardian. If he was agent enough to collect the money, he was agent enough to be punished for its embezzlement. As against the guardian, the ward is the rightful owner of such property, it matters not what the rights of others may be."

The same doctrine is stated as the general rule in Pomeroy's Equity Jurisprudence (2d Ed.) § 1077. See, also, 28 C. J. 1031; 12 Ruling Case Law, 1169; Porter v. Fillebrown, 119 Cal. 235, 51 P. 322; Mayo v. Overstreet, 107 Okl. 223, 227 P. 396.

VI. It appears from the bill filed in this case that on September 2, 1915, appellant was, by the county court of Ottawa county, appointed guardian of her sister, the appellee. She qualified as such, and in that capacity took entire charge of her ward's property, executed a lease, collected royalties, and exercised general supervision over the estate of her sister. This continued until the Department of Interior ruled that the appellee was an incompetent Indian, and that her affairs should properly be administered by the agents of the government. Subsequent to that time the guardian continued to act in her representative capacity, but only as directed by the government. She sought and obtained authority, when requested, of the county court, to execute the lease of July, 1920, on behalf of her ward.

When the appellee obtained her majority, the guardian, on April 14, 1921, filed a final report covering her entire administration of the affairs of her ward. There was considerable litigation over the settlement of the estate. Exceptions, and amended exceptions were filed, considered by the court, and overruled, except as to the one item, as to which the ruling was adverse to the guardian. The authority of the court, generally, to effect a settlement of the estate is not questioned. But as to one item, with which we are here concerned, it is said there was a lack of jurisdiction of the subject-matter.

[1, 2] Jurisdiction is the power to hear and determine a controversy. The county courts of Oklahoma, clothed with probate authority, and empowered to administer the estates of minors, clearly had authority to cause a settlement to be made between a guardian and a ward. It was the statutory duty of the court to adjudicate controversies arising in such a proceeding. The order entered, the judgment rendered, is subject to review by appeal. That right has been availed of in this case. But it is not open to attack in another suit between the same parties in another court.

In Hartford Life Insurance Co. v. Johnson (C. C. A. 8) 268 F. 30, an action was brought in the federal court to enjoin the enforcement of a judgment of the circuit court of Henry county, Mo., which judgment was affirmed by the Supreme Court of that state. This court said: "It is true the jurisdictional allegations of a complaint may be put in issue by proper plea, but even in such a case the court in deciding such a plea exercises jurisdiction. Even if it sustains its jurisdiction erroneously, the judgment is not subject to collateral attack, although cause for reversal upon appeal."

In United States v. Ness (C. C. A. 8) 230 F. 950, Ann. Cas. 1917C, 41, this court declared that: "The test of jurisdiction is not right decision, but the right to enter upon the inquiry and make some decision. The Iowa court had complete jurisdiction of the person of Ness when he filed his petition. Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke

the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action or ground for relief, but it includes every issue within the scope of the general power vested in the court by the law of its organization to deal with the abstract question. It is not limited to making correct decisions. · It empowers the court to determine every issue of law and of fact within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong."

In Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413, it was held that: "Jurisdiction as to the subject-matter may be limited in various ways, as to civil and criminal cases; cases at common law or in equity, or in admiralty; probate cases, or cases under special statutes; to particular classes of persons; to proceedings in particular modes, and so on. In many cases jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be that it finds that it cannot go farther. And where, in a case like that before us, the court erroneously retains jurisdiction to adjudicate the merits, its action can be corrected on review."

In the case of Cornett v. Williams, 20 Wall. (87 U. S.) 226, 22 L. Ed. 254, certain judgments entered in the probate court of Texas were attacked in a collateral proceeding and the Supreme Court said: "The application of the judgment creditor and the answer of the administrator gave the judge jurisdiction over the parties and the real estate of the deceased. Jurisdiction is the power to hear and determine. To make the order of sale required the exercise of this power. It was the business and duty of the court to ascertain and decide whether the facts were such as called for that action. The question always arises in such proceedings—and must be determined—whether, upon the case as presented, affirmative or negative action is proper. The power to review and reverse the decision so made is clearly appellate in its character, and can be exercised only by an appellate tribunal in a proceeding had directly for that purpose. It cannot and ought not to be done by another court, in another case, where the subject is presented incidentally, and a reversal sought in such collateral proceeding. The settled rule of law is that, jurisdiction having attached in the original case, everything done within the power of that jurisdiction, when collaterally

questioned, is to be held conclusive of the rights of the parties, unless impeached for fraud. · Every intendment is made to support the proceeding. It is regarded as if it were regular in all things and irreversible for error. In the absence of fraud, no question can be collaterally entertained as to anything lying within the jurisdictional sphere of the original case. Infinite confusion and mischiefs would ensue, if the rule were otherwise. These remarks apply to the order of sale here in question. The county court had the power to make it, and did make it. It is presumed to have been properly made, and the question of its propriety was not open to examination upon the trial in the circuit court. These propositions are sustained by a long and unbroken line of adjudications in this court." See, also, Toy Toy v. Hopkins, 212 U. S. 542, 29 S. Ct. 416, 53 L. Ed. 644; White v. Crow, 110 U. S. 183, 4 S. Ct. 71, 28 L. Ed. 113.

The county court of Ottawa county, in entering the judgment effecting a settlement of the guardian's account with her ward, was acting within its authority. There was not a lack of jurisdiction of the subject-matter, as that term is defined by the authorities. The District Court properly dismissed the bill, and the judgment will be and is affirmed.